[S. F. No. 15795. In Bank.—June 24, 1937.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. RAY L. RILEY, Controller, etc., Respondent.

John L. McNab and Carroll S. Bucher for Petitioner.

Markell C. Baer, Port Attorney for the City of Oakland, W. Reginald Jones, Assistant Port Attorney for the City of Oakland, as *Amici Curiae,* on Behalf of Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

THE COURT.—Petitioner, the State Compensation Insurance Fund, seeks by this proceeding in *mandamus,* to compel the respondent, the state controller, to approve a claim and issue a warrant in favor of John L. McNab, Esq., with whom petitioner has entered into a contract for professional legal services. The controller has refused to draw a warrant ''for the reason that there is no authority in the law for the State Compensation Insurance Fund to employ an attorney upon the contract''.

So far as pertinent here, the petition alleges: The facts pertaining to the constitutional and statutory authorization for the creation of the fund; that the fund was created to provide a public agency from which all employers could obtain compensation insurance; that since 1917 the fund has been operating in this state as a governmental agency and has been accumulating large reserves, now totaling over $10,000,000; that the net income of the fund in 1935 was approximately $1,275,000; that the fund has always been administered as an essential state function; that until 1935 the United States government did not attempt to impose an income tax upon the fund or upon its officers or employees; that on April 4, 1935, the attorney-general of the United States rendered an opinion reversing the prior policy of the United States in which opinion it was held that employees and officers of the fund are subject to the federal taxing power upon their compensation; that pursuant to the instructions of the attorney-general of the United States, the commissioner of internal revenue has ordered the collector of internal revenue in San Francisco to proceed to collect income taxes from all officers and employees of the fund; that the federal government has also made demand upon the fund for payment of certain federal excise and stamp taxes on the ground that the fund is performing a proprietary function; that Joseph Gallagher is secretary of the fund; that the commissioner of internal revenue has imposed an income tax and a deficiency

on Gallagher's salary as secretary; that Gallagher (whose salary can only be taxable if the income of the fund is also taxable) at the request of the fund has instituted an action before the board of tax appeals to resist the imposition of the tax; that in such action the question of the liability of the fund for income and other federal taxes will be litigated and determined; that the action of the treasury department of the United States in seeking to impose the tax imperils the integrity of the fund and threatens the same with disruption; that based on its 1935 net income the fund will be liable for an income tax of over $175,000 yearly; that the imposition of such a tax would disrupt the fund, disarrange its rates, destroy the actuarial basis upon which the fund is maintained, and would impair all the functions of the fund; that the Industrial Accident Commission by resolution has determined that it is necessary for the fund to protect its rights and interests by retaining special counsel in the Gallagher action, and by resolution has directed and authorized the manager of the fund to enter into a contract with an attorney for that purpose; that pursuant to this resolution the fund, through its manager, entered into a contract with attorney John L. McNab; that the contract was presented to and approved by the department of finance; that the contract calls for the payment to Mr. McNab of a retainer of $7,500, payable at once.

The resolution of the Industrial Accident Commission, the contract with McNab, and the rejection of respondent are attached to the petition as exhibits. The contract, after reciting the facts relevant to the emergency facing the fund and the facts relevant to the Gallagher action, recites that McNab agrees to act as attorney for Gallagher and to protect the fund for a designated fee dependent upon various contingencies. There can be no doubt that the contract attempts, so far as possible, to make McNab an ''independent contractor'' rather than an ''employee'' as those terms are ordinarily understood. One paragraph of the contract provides that ''the said Fund shall have no control or supervision whatever over the said Contractor (McNab) or the manner in which he proceeds or conducts the said proceeding above described, but that he shall, at all times, have complete freedom of action and full discretion as an Attorney, to take such steps and advance such legal arguments as he,

in his judgment as a lawyer, may believe to be necessary to properly defend said Fund.''

The respondent, through the attorney-general, has filed an answer and return by way of general demurrer. From the oral argument and from the briefs filed by petitioner and *amicus curiae,* and from our own research, it appears that the two main questions presented are: (1) Where in the judgment of the fund its rights are menaced by an action attacking its structure and integrity, inasmuch as it has a regular attorney, has it power to employ special counsel to represent its interests; and (2) assuming it has such power, may it employ such counsel independently of the state personnel board empowered by law to enforce the state Civil Service Act?

Before discussing either of these problems, some reference should be made to the statutory setup of the fund. By Statutes of 1913, page 279, as amended, it is provided that the fund shall be administered by the Industrial Accident Commission; that the commission may appoint a manager of the fund and may delegate to such manager any or all of the powers of the commission over the fund; that the fund may sue or be sued; that the fund may enter into any contracts or obligations relating to the fund which are authorized or permitted by law.

The Industrial Accident Commission has a regularly appointed attorney and an assistant, both civil service employees. These attorneys are provided for by statute. They do not represent the fund, and in the nature of things could not do so inasmuch as in many cases the fund and the commission are on opposite sides of the same case. The fund has an attorney, an assistant attorney, and various deputy attorneys, all civil service employees. There is no provision in the statute creating the fund specifically authorizing the appointment of attorneys for the fund, nor is there any statutory definition of the duties of such attorney. The attorneys are appointed for the fund under the general provisions of the act.

The attorney-general is not required to represent the fund in this or other cases. Section 473a of the Political Code, adopted in 1933, provides that ''No department . . . commission . . . of the state, . . . except the . . . State Compensation Insurance Fund . . . shall employ any legal ad-

visor or attorney other than the attorney-general . . . in any matter in which such department . . . commission . . . is interested''.

 It thus appears that the fund has its own regularly appointed counsel, and assistants, whose duty it is to represent the fund. Those attorneys devote their entire time to cases involving various phases of compensation insurance written by the fund. There is no express prohibition in any statute forbidding the employment of additional or special counsel, nor is there any statutory provision making it the duty of the regular attorneys for the fund to represent the fund in an emergency such as is here presented. Under such circumstances, and without now considering the effect of article XXIV of the Constitution dealing with civil service, it seems clear that the fund has the power to employ special counsel to protect its rights in pending litigation. The law is well settled that a public agency may employ special counsel to protect its rights, unless specifically prohibited from so doing by statutory or charter provision, and that it possesses this power whether or not such public agency has a regularly appointed attorney, if such regularly appointed attorney is not specifically charged with the particular duty involved. This problem has been frequently presented in reference to the employment by municipal corporations of special counsel to assist the regularly appointed or elected city attorney in special litigation. This subject is discussed at length in an annotation appearing in 83 American Law Reports 135. At page 137 of that annotation the following statement, supported by authorities from many states, appears: ''In the absence of statutory or charter restriction, a city may employ special counsel to assist the city attorney when the gravity or extent of the litigation reasonably requires the service of such additional counsel.'' That statement of the law is amply borne out by the decisions of this court. In the early case of *Hornblower* v. *Duden,* 35 Cal. 664, it was held that the board of supervisors without specific statutory authority, could employ special counsel to assist the district attorney, not only in cases in which the county is a party, but in any cause in which the county is interested. At page 670 it is stated: ''The point as to the power of the Board to employ other counsel than the District Attorney, is answered by the case of *Smith* v. *Mayor of Sacramento,* 13

Cal. 531, 533, and nothing need be added to what is there said. While the power is not expressly conferred, yet it is obviously embraced in the general power to control the prosecution and defense of all suits to which the county is a party— which we construe to mean not only suits to which she is a party upon the record, but all suits in the prosecution or defense of which she has or is supposed to have an interest—and in the further power 'to do and perform all such other acts and things as may be strictly necessary to the full discharge of the powers and jurisdiction conferred on the Board.' (Sec. 9, subd. 13.) There are a variety of circumstances under which the interests of the county might be neglected or wholly sacrificed, unless the Board has authority to employ other counsel than the District Attorney. He may be incompetent, or sick, or absent from the county, or engaged in other business, or the business in hand may be of such magnitude and importance as to demand, on the part of the Board, in the exercise of such foresight and care only as business men bestow upon important matters, the employment of additional counsel. There is no reason why public as well as private interests should not be subserved by the employment of several counsel, when the exigencies of the case are such as to demand it, in the judgment of prudent men; and we are satisfied that the Legislature has not been so unwise as to render such a course impossible.'' See, also, *Lassen County* v. *Shinn,* 88 Cal. 510 [26 Pac. 365].

The principle here involved was also recognized in *Knight* v. *City of Eureka,* 123 Cal. 192 [55 Pac. 768], holding that while the city council had authority to employ special counsel and fix his compensation, it could not employ special counsel and delegate to him the power to employ other special assistant counsel and fix his compensation. Such power, it was held, could not be delegated. In *Rafael* v. *Boyle,* 31 Cal. App. 623 [161 Pac. 126], the court recognized the general rule that public agencies may employ special counsel to assist its regular counsel, but held that a civil service commission had no authority to employ special counsel when its regular counsel, the city attorney, was ready, able, and willing to act. In *Merriam* v. *Barnum,* 116 Cal. 619 [48 Pac. 727], it was held that a board of supervisors could not hire special counsel to advise it in matters specifically delegated to the district attorney.

From these cases, and many others that could be cited, it is clear that the fund has the power to employ special counsel to protect its interests in the Gallagher action. ▮ However, a determination of this question is not decisive of the problem presented by this petition. The question still remains as to whether or not the fund must employ such counsel through the state personnel board under civil service.

In 1934 article XXIV, providing for state civil service, was added to the Constitution. The terms of this constitutional provision are very broad. Section 2 creates a state personnel board and section 3 gives this board the power to enforce and administer the Civil Service Act. Section 4 (a) provides: ''The provisions hereof shall apply to, and the term 'State civil service' shall include, every officer and employee of this state except . . . '' There then follow fourteen exceptions, none of which is applicable here. Section 4 (c) provides that ''whenever the appointment or employment of new or additional officers or employees of this State is hereafter authorized by law, such officers or employees shall be subject to the provisions hereof and included within the State civil service unless of a class excepted herein''. Section 6 provides for certain limitations on temporary appointments.

The state Civil Service Act (Stats. 1913, p. 1035, as amended; 1931 Deering's Gen. Laws, Act 1400, as amended) in section 1 defines the term ''position'' as including ''all offices and employments under state authority'' with certain exceptions not here pertinent. Section 7 provides that the appointing power in all cases not excepted or exempted ''shall fill the positions by appointment . . . in strict accordance with the provisions of this act . . . '' The fifth subdivision of section 7 exempts from the operation of the act ''the assistant and deputies of the attorney general and all special attorneys for boards and officers''. Article XXIV, section 4, subdivision 3, of the Constitution exempts from civil service ''State officers and employees directly appointed or employed by the Attorney General'', but no reference is to be found in the Constitution to ''special attorneys for boards and officers''. It is obvious that the constitutional provision repealed by implication (if it did not do so expressly) all inconsistent statutory provisions. The statutory provision in reference to

special attorneys is obviously inconsistent with the Constitution and was therefore repealed.

■ Section 9 of the act provides that appointments to all positions shall be made by the appointing power in the manner provided; that is, the appointing power shall first notify the commission of the position desired to be filled, stating the duties of the position; the commission shall then certify to the appointing power the names of three persons highest on the eligible list; then the appointing power must fill the position by the appointment of one of the persons so certified. Section 11 provides that when there is no eligible list for such position, ''the appointing power may, with the consent of the commission, fill such position by temporary appointment'', which shall not continue for longer than three months. Section 12 provides for ''emergency'' appointments.

In the argument submitted to the voters at the time article XXIV was voted upon, it is stated: ''The purpose of this constitutional amendment is to promote efficiency and economy in state government. The sole aim of the act is to prohibit appointments and promotion in the service except on the basis of merit, efficiency, and fitness ascertained by competitive examination. . . . The Legislature is prohibited from exempting any group from the merit system of employment, although a few agencies are temporarily exempted, with the provision that most of the exempt classes may be included by future legislative act. . . . To sum up, this constitutional amendment provides: (1) Employment in the classified service based solely on merit and efficiency; (2) a non-partisan Personnel Board; (3) prohibition against exemptions from the merit system of employment; (4) correction of the temporary political appointment evil. . . . ''

■ From the above analysis it appears that the constitutional provision and the statute are comprehensive in their scope. The constitutional provision leaves no room for interpretation, applying as it expressly states, to ''every officer and employee of this state'' with fourteen exceptions. This court is without power to create additional exceptions by implication.

■ Petitioner urges that the services to be rendered by Mr. McNab are urgent, temporary, and require expert knowledge, experience, and ability. However, it is not alleged that the services here involved could not be rendered by one

selected under the provisions of the Civil Service Act, and it is admitted that no application was ever made to the personnel board for a temporary appointment as required by the statute. Petitioner does not refer us to any provision of the Constitution or statute which distinguishes between urgent temporary employment and permanent employment or between skilled and nonskilled employees, or between professional and nonprofessional services. When civil service was adopted in 1934 by vote of the people, it was unequivocally declared to be the policy of this state that every employee and officer of the state should be included therein with certain enumerated exceptions not here involved. All types of service were included therein—no distinction between professional and nonprofessional, or between temporary and permanent employment was made either in the constitutional provision or in the act. There can be no doubt that both the constitutional provision and the statute embrace within their terms professional as well as nonprofessional service.

It cannot be successfully contended that the mere fact that the appointing power enters into a contract under the terms of which the one rendering the services is designated as an ''independent contractor'' rather than an ''employee'' necessarily removes such contract for services from the operation of civil service. There undoubtedly is a field in which state agencies may enter into contracts with independent contractors. But the true test is not whether the person is an ''independent contractor'' or an ''employee'', but whether the services contracted for, whether temporary or permanent, are of such a nature that they could be performed by one selected under the provisions of civil service. If the services could be so performed then in our opinion it is mandatory upon such appointing power to proceed in accordance with the provisions of the Constitution and statute above summarized. As already stated, the petition does not allege that the services here involved could not be performed satisfactorily by an attorney selected under civil service. The services contracted for are the services of an attorney. Attorneys are included within civil service, and in the absence of a showing to the contrary we must assume that such services could be adequately and competently performed by one selected in accordance with the mandate of the Constitution. Any other construction of the constitutional provision would

have the effect of weakening, if not destroying, the purpose and effect of the provision. With the policy of such an all-embracing civil service law this court is not concerned—the policy has been declared and embodied in a constitutional provision, and all that this court has power to do is to enforce such clearly declared policy.

The petition for a writ of mandate is denied.