[L. A. No. 19805. In Bank. Sept. 17, 1947.]

R. Y. BURUM et al., Appellants, v. STATE COMPENSATION INSURANCE FUND, Respondent.

R. Y. Burum and John Shortridge, in pro. per., for Appellants.

Robert W. Kenny, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Respondent.

SPENCE, J.—This is an appeal from a judgment for defendant which was entered in consequence of the sustaining of special and general demurrers to plaintiffs' second amended complaint without leave to amend.

Plaintiffs, a firm of attorneys, seek to recover from defendant, State Compensation Insurance Fund, certain attorneys' fees in pursuance of a written contract alleged to have been made between the parties. The trial court ruled adversely to plaintiffs' claim for compensation ''on the ground that the Fund has no authority to make the contract sued on in this case.'' Plaintiffs properly challenge the propriety of that ruling in view of the facts alleged and the law applicable thereto.

From the second amended complaint, it appears that plaintiffs, as attorneys for the widow and three minor children of one E. E. Davis, who was killed in an industrial accident, brought an action for damages against the alleged negligent third parties. The State Compensation Insurance Fund, which was the insurance carrier for Davis' employer, paid the widow for herself and as guardian *ad litem* of the three minor children, the sum of $6,300 in pursuance of an award of the Industrial Accident Commission. The Fund claimed the right to recover said amount of death benefits ''as special damages against [the responsible] third parties, either in a separate suit brought in its own name, or by lien imposed on the judgment in any action brought by the widow on behalf of herself and the minor children.'' Electing to follow the latter course, the Fund entered into a written contract with plaintiffs for them to represent it in the death action and ''to recover the amount of its lien against any judgment obtained or amount paid in settlement of said case'' for a contingent fee of 25 per cent. As reason for their employment by the Fund, plaintiffs allege that ''an action instituted in the Fund's name, as an insurer claiming subrogation, would be likely to

encounter prejudice and hostility on the part of a jury, while an action prosecuted in the name of the widow on behalf of herself and of said minor children would be likely to excite a sympathetic consideration of all the evidence on the part of the jury''; that ''at the time of negotiation of [said] contract . . . neither the widow nor the Fund knew of the existence of any insurance or property from which a judgment in excess of Five Thousand Dollars '($5,000.00) could be satisfied''; that ''the Fund was entitled to payment of Sixty-three Hundred Dollars ($6300.00) before any damages were payable to the widow, and in view of this priority no incentive existed for the widow to continue the prosecution of her action''; that under the contract, an incentive for her attorneys, plaintiffs herein, existed to obtain a judgment and ''explore the possibility of discovering additional assets' subject to execution, if [they] could look to the Fund as well as to [the] widow for a fee''; and that through the services of her attorneys, ''performed simultaneously and incidentally in the interest of the Fund,'' there would be ''a better prospect of obtaining damages on behalf of the Fund'' than would be the case if the Fund relied on ''the services of attorneys in the civil service employ of [the] Fund.''

It is then alleged that plaintiffs ''fully performed their part of [the] agreement and obtained judgment for, and actually collected . . . and caused to be paid to the Fund . . . Fifty-eight Hundred Dollars ($5800.00),'' of which amount ''plaintiffs [are] entitled to receive from the Fund the sum of Fourteen Hundred Fifty Dollars ($1450.00)'' under the terms of the contract; that ''the services contracted for and performed by plaintiffs . . . were of such a nature that they could not be performed adequately or competently or satisfactorily by an attorney or attorneys selected under the provisions of the Civil Service Act of the State of California''; that ''by reason of the selection and employment of plaintiffs by the Fund, it was possible for the Fund to obtain greater, speedier, more satisfactory and more adequate service than it could have obtained by use of any attorneys other than plaintiffs acting as attorneys for the widow and minor children in [the death] action''; that at all times ''plaintiffs were actively in charge of the litigation'' and ''by reason of the investigation they had made, the preparation of pleadings by them, and their familiarity with the facts and the law pertaining to said litigation, and their concurrent representation

of the widow and minor children in [the death] action, they were in a position to render adequate, competent, speedy and satisfactory service to the Fund and on the Fund's behalf''; that as a result of plaintiffs' efforts the Fund was reimbursed to the extent above noted; that ''the widow and minor children entered into an agreement approved by the Court to pay . . . plaintiffs . . . a percentage of any amounts recovered over and above the amount of the lien of the Fund''; that ''because of the facts and under the circumstances above alleged, the Fund could not be adequately represented by one of its attorneys selected under civil service, and consequently [it] employed the plaintiffs, as aforesaid''; and that ''plaintiffs demanded . . . from the Fund'' their fee but it has been refused and still remains unpaid.

The pivotal question presented by this appeal from a judgment on demurrer is the sufficiency of plaintiffs' allegations to sustain their claim for compensation against the Fund. In support of the judgment, defendant Fund first argues that approval of its contract with plaintiffs would involve violation of article XXIV of the state Constitution, being the so-called Civil Service Amendment adopted in 1934. This argument accords with the view of the trial court that the Fund was without ''authority'' to negotiate such independent arrangements for legal services as were performed by plaintiffs. In this connection defendant relies upon the case of *State Compensation Insurance Fund* v. *Riley*, 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R. 1503], wherein the Fund entered into an agreement with a special attorney calling for him ''to act as attorney for [its secretary] Gallagher'' in the prosecution of certain federal tax litigation and ''to protect the fund'' in its correlative interest therein. After the agreement was made the State Controller refused to draw a warrant for the stipulated retainer fee. An action in mandamus ensued. In denying the writ, this court discussed at length the purport of the state civil service system as reflected by the history of the constitutional amendment above mentioned and the statutes enacted relating thereto. Without repeating that discussion, suffice it to say that the civil service provisions were expressly declared to be ''comprehensive in their scope'' and ''to embrace within their terms professional as well as nonprofessional service'' performed for the state. Thus, while recognizing that the legal services there in question were ''urgent, temporary and require[d] expert knowledge, experience and

ability,'' this court significantly stated at pages 134-135 that it was ''not alleged'' in the petition that the ''services . . . involved could not be rendered by one selected under the provisions of the Civil Service Act.'' In line with this pertinent observation, this court continued at page 135:. ''There undoubtedly is a field in which state agencies may enter into contracts with independent contractors. But the true test is not whether the person is an 'independent contractor' or an 'employee', but whether the services contracted for, whether temporary or permanent, are of such a nature that they could be performed by one selected under the provisions of civil service. If the services could be so performed then in our opinion it is mandatory upon such appointing power to proceed in accordance with the provisions of the Constitution and statute above summarized. As already stated, *the petition does not allege that the services here involved could not be performed satisfactorily by an attorney selected under civil service.* The services contracted for are the services of an attorney. Attorneys are included within civil service, and in the absence of a showing to the contrary we must assume that such services could be adequately and competently performed by one selected in accordance with the mandate of the Constitution.'' (Emphasis added.)

Plaintiffs' second amended complaint, as above reviewed, demonstrates their awareness of the exception noted in the Riley case as ground for removing the contract here in question ''from the operation of civil service.'' Thus, it is alleged that ''the services contracted for and performed by plaintiffs . . . were of such a nature that they could not be performed adequately or competently or satisfactorily by an attorney or attorneys selected under the provisions of the Civil Service Act.'' The force of such allegation stems from the fact that in the conduct of its insurance business the Fund operates on a ''fairly competitive'' basis with private insurance carriers and has the power to ''enter into any contracts or obligations relating to the State Compensation Insurance Fund which are authorized or permitted by law.'' (Ins. Code, §§ 11775, 11783.) So pertinent are these statutory provisions in measure of the Fund's rights here. If the employer is insured against workmen's compensation liability, the insurer has the same right of action as the employer, or is subrogated to the employer's right. (Lab. Code, § 3850, subd. (b) ; Ins. Code, § 11662.) In enforcing its cause of action the

insurer may (1) bring suit in its own name (Lab. Code, §§ 3851, 3852) ; (2) join as party plaintiff in the suit previously filed by the employee (Lab. Code, § 3853) ; or (3) abstain from suit and claim as a first lien against the entire amount of any judgment recovered by the employee, the amount of expenditures for compensation. (Lab. Code, § 3856.)

In the present case, according to the facts pleaded, the Fund elected the third course of procedure, the lien method of recovery in the death action, as best calculated to assure its recoupment of ''expenditures for compensation.'' By that election, so it is alleged, the Fund avoided any prejudice which might accrue were it to appear before a jury as a party litigant seeking from ''third parties'' a recovery to reimburse itself against an insurance loss. Moreover, in line with the allegation that the reimbursement claim of the Fund exceeded the amount of known assets from which a judgment against the responsible ''third parties'' could be satisfied and the consequent priority right of the Fund in the damage recovery, the widow manifestly would have had no incentive to employ attorneys to prosecute the action for the sole benefit of the Fund and at the same time the Fund was without legal right to substitute in such litigation its attorneys or any other attorney selected by civil service examination in the place of the attorneys selected by the widow. But the Fund had a recognized *interest* in the death action by virtue of its claim of a lien upon any judgment that might be obtained therein and, *a fortiori,* it was to the Fund's advantage to have that action continued in pursuance of an approved means of effecting its reimbursement for ''expenditures for compensation.'' (Lab. Code, § 3856.) Such claim of lien undoubtedly constituted an interest in the death action as would warrant the Fund's employment of special counsel for its protection, consistent with its broad powers to conduct its insurance business on a ''fairly competitive'' basis and to take such steps as it should deem proper to keep its losses at a minimum. (Cf. *State Compensation Insurance Fund* v. *Riley, supra,* 9 Cal.2d 126, 131-132.) In so attempting to bring about a recovery in the pending litigation, the Fund was proceeding not on any theory of subrogation to the heirs' right to maintain their damage action (*Jacobsen* v. *Industrial Acc. Com.,* 212 Cal. 440, 446 [299 P. 66]) but on the premise of safeguarding its legitimate lien interest as created by statute. (*Merino* v. *Pacific Coast Borax*

*Co.,* 124 Cal.App. 336, 344 [12 P.2d 458].) Thus, according to plaintiffs' pleading, the Fund contracted for them (1) "to represent it" in the death action as well as (2) "to recover the amount of its lien against any judgment obtained or amount paid in settlement of said case." By such contract of employment, the Fund allegedly undertook to secure representation in litigation vital to the protection of its undisputed interest and to give it actual value. Likewise, in the exercise of its discretion with respect to the performance of its essential business functions, it allegedly deemed provision for plaintiffs, the attorneys for the widow, to share in the Fund's recovery to the extent of a contingent fee of 25 per cent would prove an incentive for the discovery of additional assets from which a judgment in the death action could be satisfied, and it elected to proceed on that basis as a matter of efficient handling of its lien claim. By reason of the unique set of facts alleged by plaintiffs, the services which they were required to, and did, perform in accordance with their contractual arrangements with the Fund involved considerably more than "the collection of a lien." Allegedly, as a matter of tactics and in recognition of certain practical considerations affecting its status with reference to the death action (cf. *Jacobsen* v. *Industrial Acc. Com., supra,* 212 Cal. 440, 446-447), the Fund negotiated its contract with plaintiffs in pursuance of one of the approved methods designed to keep its losses at a minimum by reason of compensation paid as part of its insurance business. (Lab. Code, § 3856.) Accordingly, the facts pleaded support plaintiffs' allegation that the particular services here in question "could not be performed adequately or competently or satisfactorily" by attorneys selected under civil service; and such pleading is sufficient, on demurrer, to bring plaintiffs' case within the exception above noted in *State Compensation Insurance Fund* v. *Riley, supra,* 9 Cal.2d 126, 135.)

Defendant next challenges "the ethics of employing the widow's attorneys to do the work of recovering the amount of the Fund's lien against her judgment." Such arrangement, it is argued, placed plaintiffs "in the position of representing adverse interests" and, as supporting authority, *Anderson* v. *Eaton,* 211 Cal. 113 [293 P. 788], is cited. But that case is wholly distinguishable upon its facts. There the plaintiff, suing for attorney's fees, had undertaken to represent defendant, the mother of a deceased employee, in an action

against a third party tort feasor at a time when plaintiff was also acting as attorney for the insurance carrier in resisting defendant's claim against the insurance carrier before the Industrial Accident Commission. Plaintiff represented to defendant that the insurance carrier "would not contest her claim before the Industrial Accident Commission" and "advised the defendant not to employ an attorney to represent her at the hearings before the Industrial Accident Commission," and "not to divulge that he was representing her in her claim" against the third party tort feasor. Upon such representations and advice, defendant signed a contract employing plaintiff "on a one-third contingent fee basis" to "press her claim" against the third party tort feasor. Thereafter, and while under employment by both defendant and the insurance carrier, plaintiff appeared at the several hearings before the Industrial Accident Commission on behalf of the insurance carrier and "while admitting liability, apparently contested or questioned defendant's claim as to the degree of dependency. As a result of these hearings, defendant received an award of $309, although plaintiff, prior to his employment by defendant, had approximated the claim against the employer to be worth $1500." With that factual situation before it, the trial court denied relief upon findings that the contract with defendant "had been procured by fraud" on the part of plaintiff, and "that it was against public policy and void." The judgment for defendant was affirmed. In so deciding, this court found it unnecessary to pass upon the sufficiency of the evidence to sustain the finding of fraud as it declared at page 116 that "as found by the court below, the contract sued on is clearly against public policy and void."

While in its consideration of the *Anderson* v. *Eaton* case, this court did refer to a possible conflict of interests in the event of an offer of settlement of the claims of defendant and the insurance carrier against the third party tort feasor, the decision was grounded upon the actual conflict of interests between defendant and the insurance carrier in the pending litigation before the Industrial Accident Commission. Thus, it was said at pages 116 and 117: "While the defendant had knowledge that plaintiff was the legal representative of the insurance carrier of the Gas Company and received an annual retainer therefor, plaintiff failed to explain to her wherein the two employments were adverse. As attorney for the defen-

dant, plaintiff could, and probably did, secure confidential information concerning the degree of her dependency upon her deceased son. On the other hand, his representation of the Gas Company's compensation insurance carrier required him to contest defendant's claim before the Industrial Accident Commission, at least upon the issue of dependency. His dual employment thus placed him in a position to use this confidential information to the defendant's detriment. As already intimated, it is immaterial whether or not plaintiff, as counsel for the insurance carrier, actually availed himself before the commission of information received from the defendant while acting as her attorney. The impropriety of the dual employment is readily apparent.'' But the cited case does not hold that a contract of employment whereby an attorney undertakes to represent the dependent of a deceased employee in an action against a third party tort feasor, while also representing the compensation insurance carrier of the employer, is necessarily and under all circumstances against public policy and void.

In the present case, the litigation of the compensation claim had been entirely completed, the award had been paid, and plaintiffs had already brought the action on behalf of the widow before they entered into their contract with the Fund looking toward the recovery of its lien against any judgment obtained or settlement made. Plaintiffs' pleading shows that ''it was to the best advantage of all parties that one firm of attorneys should represent both the widow and minor children and the Fund,'' and that the widow and minor children entered into a written contingent fee contract with plaintiffs, with the approval of the court, after a full disclosure of the factors motivating plaintiffs' employment by the Fund. Plaintiffs' pleading does not show any actual or undisclosed adverse interests, or that any advantage was taken of any of the parties, or that plaintiffs were ''required to choose between conflicting duties'' or ''to reconcile conflicting interests'' rather than ''enforce to their full extent'' the rights of all parties. (*Anderson* v. *Eaton, supra,* 211 Cal. 113, 116.) Apparently the only possible conflict of interests between the widow and the Fund which could have arisen might have developed in the event of an offer of settlement, but such *mere possibility* does not necessarily invalidate plaintiffs' contract of employment. (Thornton on Attorneys at Law, vol. I, §§ 174 et seq., pp. 307 et seq., and cases cited.) As was said

in the cited text, section 176, page 314: "The question as to whether there is any inconsistency in representing particular interests must depend largely upon the facts presented by each case." Under the facts presented by plaintiffs' complaint here, we are satisfied that no such inconsistency appears and that the contract should not be declared to be against public policy and void.

■ Defendant finally raises the matter of plaintiffs' failure to allege that they had filed a claim with the State Board of Control pursuant to sections 667 and 688 of the Political Code; and contends, in reliance upon *Bekins Van & Storage Co.* v. *State of California,* 135 Cal.App. 738 [28 P.2d 61], that the filing of such claim by plaintiffs was a condition precedent before a court could acquire jurisdiction to entertain the cause for trial. But the cited case is not in point, for there the claim was "against the state" while here the claim is "against the Fund," a "self-supporting" and independent "agency of the state" as declared by statute. (Cf. *Gilmore* v. *State Compensation Insurance Fund,* 23 Cal. App.2d 325, 329-330 [73 P.2d 640].)

At the time this action was commenced, section 11783 of the Insurance Code provided that "[T]he [Industrial Accident] commission may, on behalf of the fund and in the [fund's] name . . . sue and be sued in all actions arising out of any act or omission in connection with the fund, or in connection with its business or affairs." (Stats. 1935, ch. 145, p. 725: amended in 1945, Stats. 1945, ch. 1431, p. 2711, in a manner immaterial to this decision.) Section 11771 expressly precludes any liability against the state "beyond the assets of the [fund]" for the payment of any such claim as is here involved. Section 11782 declares that "[A]ll business and affairs of the fund shall be conducted in [its] name," and section 11774 provides that "[its] assets . . . shall be applicable to the payment of losses sustained on account of insurance and to the payment of the salaries and other expenses charged against it." Section 11778 gives general authority to "[T]he fund [to] transact workmen's compensation" business "to the same extent as any other insurer."

Sections 667 and 688 of the Political Code are general in their application to the presentation of claims against the state. The Workmen's Compensation law, the Insurance Code

and the Labor Code are special statutes. In *Brill* v. *County of Los Angeles*, 16 Cal.2d 726, 732 [108 P.2d 443], it was held that "a special statute dealing expressly with a particular subject controls and takes priority over a general statute." (See, also, *Birch* v. *County of Orange*, 186 Cal. 736, 743-745 [200 P. 647].) In line with these observations, the conclusion is inescapable that the entire framework of the Fund—its organization, its powers, its duties, and its obligations—shows that it was designed to be self-operating, and of a special and unique character; and as such, it may be sued, upon the claim here presented, without a previous filing of such claim with the State Board of Control.

From what has been said, it follows that the trial court erred in sustaining the demurrers to plaintiffs' second amended complaint without leave to amend.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., and Traynor, J., concurred.

EDMONDS, J.—In my opinion, assuming that plaintiff has pleaded sufficient facts to avoid, as against a demurrer, the bar of the Civil Service Act, the complaint does not state a cause of action because its allegations show that the contract sued upon is contrary to public policy and void.

The attorneys plead, as the basis for the recovery of fees, that, at the time the contract was made, neither the widow of Davis, nor the Fund, knew of any assets of the tort feasor from which a judgment in excess of the lien for compensation could be satisfied. As further justification for their employment, it is charged ". . . that an action instituted in the Fund's name, as an insurer claiming subrogation, would be likely to encounter prejudice and hostility on the part of a jury, while an action prosecuted in the name of the widow on behalf of said minor children would be likely to excite a sympathetic consideration of all the evidence on the part of the jury. . . ." In other words, the allegations of the complaint, in effect, are that the Fund is suing in the name of the widow.

At one time, the Workmen's Compensation Act allowed subrogation, but since the amendment of 1927, "in lieu thereof the employer is granted the right to sue or to acquire a lien for his expenditures in the event the employee sues

and recovers judgment. . . . [Lab. Code, §§ 3852, 3854, 3856.] The purpose of the change in the substantive rights of the employer and employee in such cases does not definitely appear. Counsel for the respondent corporation suggests that it was to remedy a certain abuse wherein subrogated employer plaintiffs had compromised cases for just enough to satisfy their claims and leave the employee without satisfaction of his just claim for additional damages." (*Jacobsen* v. *Industrial Acc. Com.*, 212 Cal. 440, 446 [299 P. 66].) The effect of the majority opinion is to allow an insurance carrier, under the guise of "protecting its lien," to sue in the employee's name. By this simple device the door is again opened to the abuses mentioned in the Jacobsen case.

There is broad opportunity for taking advantage of an employee under the circumstances shown by the present record. Where an attorney is hired to represent both the insurance carrier and employee in the suit against the tort feasor, he may be required to choose between the conflicting interests of his two clients. If the suit goes to trial, the injured workman may obtain a judgment for much more than the amount of compensation paid to him under the provisions of the Labor Code. There is also the possibility of an adverse judgment, in which event the insurance carrier would obtain no recovery for compensation by it. Counsel "though in good faith intending to discharge his obligation as . . . [the injured party's] attorney, would be in such a position as might have unconsciously caused him to accept an offer of compromise or settlement of her claim . . . rather than run the risk of bringing an action and jeopardizing" the carrier's rights. (*Anderson* v. *Eaton*, 211 Cal. 113, 117 [293 P. 788]. Cf. *Lessing* v. *Gibbons*, 6 Cal.App.2d 598 at 604 [45 P.2d 258].)

In *Anderson* v. *Eaton*, *supra*, as in the present case, the widow of the deceased employee was represented by counsel also employed by the carrier. She had full knowledge of his dual employment. After she discharged him and settled with the tort feasor, the attorney sued her for his fee. The court held that the contract was void as against public policy because of the conflict of interest between the two clients. Although in that case there was evidence as to fraudulent representations by the attorney and here the plaintiffs' good faith is not questioned, the ruling does not rest upon the ground of the representations of the attorney.

The distinction made in the majority opinion overlooks the vice inherent in such contracts. Although in the representation of more than one party who may benefit by the litigation, an attorney may not be called upon to choose between the interests of one of them in preference to that of another, public policy bars him from serving persons whose interests may at any time become adverse. "By virtue of this rule," it was said in the Anderson case, "an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent."

The facts pleaded in the present case show a cause of action based upon a contract which public policy forbids. A fundamental rule of the legal profession is that "a lawyer can, under no conceivable circumstances, recover for services rendered in the same suit to parties having opposing interests." (*Strong* v. *International Bldg., Loan & Investment Union*, 183 Ill. 97, 102 [55 N.E. 675, 47 L.R.A. 792].)

For these reasons, I would affirm the judgment.