OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 89-102 |
| of | : | |
| | : | APRIL 11, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DaVIGO | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE JACK O'CONNELL, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May the California Community College Foundation, pursuant to its contract with the Chancellor of the California Community Colleges, perform or contract with other private persons for the performance of the following services which the employees of the Chancellor are qualified to perform, without violating the laws regulating the state civil service: professional, technical, and related consultation and services in connection with the establishment of "hi-tech" educational centers for disabled students at the local campuses of the California Community Colleges?

## CONCLUSION

The California Community College Foundation may not, pursuant to its contract with the Chancellor of the California Community Colleges, perform or contract with other private persons for the performance of the following services which the employees of the Chancellor are qualified to perform, without violating the laws regulating the state civil service: professional, technical, and related consultation and services in connection with the establishment of "hi-tech" educational centers for disabled students at the local campuses of the California Community Colleges.

## ANALYSIS

The Board of Governors of the California Community Colleges ("board") is a state agency the responsibility of which is to carry out the functions specified in section 70901 of the Education Code.[1] (§§ 70900, 71000.) The Board is required, inter alia, to provide leadership and direction in the continuing development of the California Community Colleges (CCC) as an integral and effective element in the structure of public higher education in the state (§ 70901, subd. (a)), and in consultation with community college districts, to administer state support programs, both operational and capital outlay, and those federally supported programs for which the board has

---

[1]Except as specifically identified, section references herein are to the Education Code.

responsibility pursuant to state or federal law (§ 70901, subd. (b)(5)), and to coordinate and encourage interdistrict, regional, and statewide development of community college programs, facilities, and services (§ 70901, subd. (b)(7)).

The Chancellor of the California Community Colleges is the chief executive officer of the board. (§ 71090.) The chancellor is required to employ and fix the compensation, in accordance with law, of such assistants, clerical, and other employees as he may deem necessary for the effective conduct of the work of the board and the chancellor's office. (§ 71092.) The chancellor may assume any power of the board delegated to him. (§ 70901, subd. (d).)

Except as may be otherwise provided in the California Constitution, the civil service includes every officer and employee of the state. (Cal. Const., art. VII, § 1; 71 Ops.Cal.Atty.Gen. 154, 159 (1988); 67 Ops.Cal.Atty.Gen. 27, 28 (1984); 65 Ops.Cal.Atty.Gen. 475, 479 (1982).) Exemptions are designated in section 4 of article VII. Among those exempted, under subdivision (h) of section 4, are "Officers and employees of the University of California and the California State Colleges." The exemption does not include the officers and employees of the Chancellor of the California Community Colleges. Such employees are, therefore, civil service employees of the State of California.

The California Community College Foundation (CCF), organized in 1983 under the Nonprofit Public Benefit Corporation Law, is governed by a board of directors appointed by the Board of Governors. Its purpose is to assist and promote the activities of the board on behalf of the CCC. Principal objectives for the preceding fiscal year included, by way of example, the continuation and expansion of the administration of grants and contracts which benefit the CCC, the expansion of services to the colleges in the area of identification of new sources of funding, technical assistance and training in resource development, and assistance in the development and dissemination of information regarding CCC.

The "hi-tech" centers program is designed to improve the academic performance, personal productivity and employability of disabled students in post secondary education through the use of advanced computer technology. The program, which is a cooperative undertaking between the chancellor, the Department of Rehabilitation, and participating community colleges, provides computer access, sophisticated productivity, basic skills, computer assisted instruction and cognitive retraining software for students with learning disabilities or acquired brain injury. Specifically, the Department of Rehabilitation has contracted with CCF for the administration of the program, while CCF has, in turn, contracted with the chancellor for the salaries and benefits of its employees who run the program in conjunction with and under the supervision of the chancellor.

We are further advised that in connection with its administration of the "hi-tech" program, CCF enters into contracts with private parties and firms for professional, technical, and related consultation and services. It is assumed for purposes of this analysis that CCF is duly constituted and otherwise authorized to perform the functions in question, and to contract for the performance of such functions. As a private entity, its employees are not civil service employees of the State of California.

We are asked whether CCF may, pursuant to or in furtherance of its contract with the chancellor, perform or contract for the performance of such services, based upon the express assumption that employees of the chancellor are qualified and available to perform them. Since we shall determine in any event, based upon the assumptions provided, that the performance of the designated services may not be contracted to a third party, we need not examine whether the chancellor is otherwise authorized to enter into such contracts or to delegate such functions. (See, 71 Ops.Cal.Atty.Gen. 266, 268-275 (1988).)

Article VII of the California Constitution establishes the state civil service and creates the State Personnel Board to administer and enforce the laws enacted to implement the constitutional provisions. The principal body of those laws, known as the State Civil Service Act, is found in the Government Code, section 18500 et seq. (*California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390, 395.) The restriction against the "contracting out" of state functions to the private sector does not arise from the express terms of article VII; "Rather, it emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction." (*Id.* 397; and see *State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126, 134-135; *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 579-582; *San Francisco* v. *Boyd* (1941) 17 Cal.2d 606, 618-620; *Kennedy* v. *Ross* (1946) 28 Cal.2d 569, 571-573; *Stockburger* v. *Riley* (1937) 21 Cal.App.2d 165, 167-169.)

In 1982, the Legislature prescribed by statute the conditions under which state contracts, commonly referred to as "personal service contracts", may be awarded to private concerns. Specifically, Government Code section 19130 provides as follows:

"The purpose of this article is to establish standards for the use of personal services contracts.

"(a) Personal services contracting is permissible to achieve cost savings when *all* the following conditions are met:

"(1) The contracting agency clearly demonstrates that the proposed contract will result in actual overall cost savings to the state, provided that:

"(A) In comparing costs, there shall be included the state's additional cost of providing the same service as proposed by a contractor. These additional costs shall include the salaries and benefits of additional staff that would be needed and the cost of additional space, equipment, and materials needed to perform the function.

"(B) In comparing costs, there shall not be included the state's indirect overhead costs unless these costs can be attributed solely to the function in question and would not exist if that function was not performed in state service. Indirect overhead costs shall mean the pro rata share of existing administrative salaries and benefits, rent, equipment costs, utilities, and materials.

"(C) In comparing costs, there shall be included in the cost of a contractor providing a service any continuing state costs that would be directly associated with the contracted function. These continuing state costs shall include, but not limited to, those for inspection, supervision, and monitoring.

"(2) Proposals to contract out work shall not be approved solely on the basis that savings will result from lower contractor pay rates or benefits. Proposals to contract out work shall be eligible for approval if the contractor's wages are at the industry's level and do not significantly undercut state pay rates.

"(3) The contract does not cause the displacement of civil service employees. The term `displacement' includes layoff, demotion, involuntary transfer to a new class, involuntary transfer to a new location requiring a change of residence, and time base reductions. Displacement does not include changes in shifts or days off, nor does it include reassignment to other positions within the same class and general location.

"(4) The contract does not adversely affect the state's affirmative action efforts.

"(5) The savings shall be large enough to ensure that they will not be eliminated by private sector and state cost fluctuations that could normally be expected during the contracting period.

"(6) The amount of savings clearly justify the size and duration of the contracting agreement.

"(7) The contract is awarded through a publicized, competitive bidding process.

"(8) The contract includes specific provisions pertaining to the qualifications of the staff that will perform the work under the contract, as well as assurance that the contractor's hiring practices meet applicable nondiscrimination, affirmative action standards.

"(9) The potential for future economic risk to the state from potential contractor rate increases is minimal.

"(10) The contract is with a firm. A `firm' means a corporation, partnership, nonprofit organization, or sole proprietorship.

"(11) The potential economic advantage of contracting is not outweighed by the public's interest in having a particular function performed directly by state government.

"(b) Personal services contracting also shall be permissible when *any* of the following conditions can be met:

"(1) The functions contracted are exempted from civil service by Section 4 of Article VII of the California Constitution, which describes exempt appointments.

"(2) The contract is for a new state function and the Legislature has specifically mandated or authorized the performance of the work by independent contractors.

"(3) The services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experience, and ability are not available through the civil service system.

"(4) The services are incidental to a contract for the purchase or lease of real or personal property. Contracts under this criterion, known as `service agreements,' shall include, but not be limited to, agreements to service or maintain office equipment or computers that are leased or rented.

"(5) The legislative, administrative, or legal goals and purposes cannot be accomplished through the utilization of persons selected pursuant to the regular civil service system. Contracts are permissible under this criterion to protect against a conflict of interest or to insure independent and unbiased findings in cases where

there is a clear need for a different, outside perspective. These contracts shall include, but not be limited to, obtaining expert witnesses in litigation.

"(6) The nature of the work is such that the Government Code standards for emergency appointments apply. These contracts shall conform with Article 8 (commencing with Section 19888) of Chapter 2.5 of Part 2.6.

"(7) State agencies need private counsel because a conflict of interest on the part of the Attorney General's office prevents it from representing the agency without compromising its position. These contracts shall require the written consent of the Attorney General, pursuant to Section 11040.

"(8) The contractor will provide equipment, materials, facilities, or support services that could not feasibly be provided by the state in the location where the services are to be performed.

"(9) The contractor will conduct training courses for which appropriately qualified civil service instructors are not available, provided that permanent instructor positions in academies or similar settings shall be filled through civil service appointment.

"(10) The services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate their very purpose.

"(c) All persons who provide services to the state under conditions the board determines constitute an employment relationship shall, unless exempted from civil service by Section 4 of Article VII of the California Constitution, be retained under an appropriate civil service appointment."

(Emphases added.)

We first consider the provisions of subdivision (b) which permits contracting with a private entity where any of the enumerated conditions are satisfied. Paragraph 2, for example, permits such a contract for a new state function where the Legislature has specifically mandated or authorized the performance of the work by independent contractors. While the contract in question may be for a new state function, the Legislature has not specifically mandated or authorized its performance by contractors. Paragraph 3 permits a contract where the services are not available or cannot be satisfactorily performed within the civil service. In a related provision, contracting is allowed under paragraph 5 where legislative, administrative, or legal goals and purposes cannot be accomplished through the civil service. However, we have been asked to assume the contrary, i.e., that qualified civil servants are available to perform the services sought to be contracted. Nor have we been provided with any factual predicate for the application of any of the other permitting events in subdivision (b).

Subdivision (a), on the other hand, permits the contracting of services only where its purpose is to achieve cost savings, and all[2] of the enumerated conditions are satisfied. Since the

---

[2]The requirement of paragraph 7, however, that the contract be awarded through a publicized, competitive bidding process, may not be applicable to CCF. Section 10340, subd. (b)(3) of the Public Contract Code provides that the bidding requirements of that section do not apply to a contract with an auxiliary organization of a California community college, or a foundation organized

absence of cost savings, or the failure to satisfy any of the other specified conditions would constitute a disqualification, we shall assume for purposes of this discussion, in the absence of any suggestion to the contrary, that all of these conditions have been satisfied.[3]

No reference in subdivision (a) is made to the availability or nonavailability of qualified civil service employees. However, the nonavailability of such personnel as an added condition for such a contract is not only implicit in the terms of subdivision (a), but is a constitutionally compelled condition. With respect to the terms of the statute itself, the court observed in *California State Employees' Assn.* v. *State of California, supra,* 199 Cal.App.3d at 846-847:

> "However, far from displacing or destroying the constitutional scheme, subdivision (a) of section 19130 is carefully crafted to permit personal service contracts to achieve cost savings only when they will have no detrimental effect on the integrity of the civil service system. Thus it requires more than a demonstration of cost savings to satisfy subdivision (a); it must also satisfactorily be shown that civil service objectives are protected, including maintenance of state pay rates (subd. (a)(2)), nondisplacement of civil service employees (subd. (a)(3)), affirmative action (subds. (a)(4), (a)(8)), and nondiscrimination (subd. (a)(8)). The statute combines considerations of efficiency and economy with other interests, including those of state employees. (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 381.)

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> ". . . all contracts awarded pursuant to subdivision (a) must be consistent with civil service objectives, including nondiscrimination and nondisplacement of civil service personnel. (Subds. (a)(3), (4), (8); see Pub. Contracts Code, §§ 10337, 10362.) Moreover, subdivision (a) requires cost comparisons, quality controls, and, most importantly, a publicized, competitive bidding process. (Subds. (a)(5), (6), (7), (8).) Far from presaging a return to the spoils system, subdivision (a) contains effective safeguards against the evils of the past."

With respect to the constitutional limitation, an established exception to the mandate of civil service exists where the nature of the services is such that they cannot be performed "adequately or competently or satisfactorily" by employees selected through the civil service. (*State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126, 134-136; *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 582.) The *Riley/Burum* exception is an integral aspect of subdivision (a). (*California State Employees' Assn.* v. *State of California, supra,* 851-853.) In the latter case the court explained (*id.* 852-853):

---

to support the Board of Governors of the California Community Colleges.

[3]It may be fairly assumed in this regard, on the basis that the contract is for a new state function, i.e., the establishment and development of "hi-tech" centers, that the contract would not cause the *displacement* of civil service employees within the meaning of paragraph 3. As noted in *California State Employees' Assn.* v. *State of California* (1988) 199 Cal.App.3d 840, 850: ". . .the state civil service suffers no displacement and the underlying constitutional policy is not offended when a new state activity is conducted by contract with a separate public or private entity."

"Notwithstanding the omission from its text, we are satisfied the *Riley/Burum* exception is an implicit part of subdivision (a). Section 19131 requires the Board to notify all affected state employee organizations regarding any proposed personal services contract and allows those organizations 10 days within which to request the Board to review the contract for compliance with the requirements of subdivision (a); the review shall be conducted in accordance with subdivision (b) of section 14831.6. Section 14831.6 has been repealed and readopted without significant change as Public Contract Code section 10337 (see Stats. 1983, ch. 1231, §§ 1.5, 4). Subdivision (b) of the latter section is virtually identical to subdivision (b) of former section 14831.6 and provides in part: `The State Personnel Board shall direct any state agency to transmit to it for review any contract proposed or executed pursuant to subdivision (a) of Section 19130 of the Government Code, if the review has been requested by an employee organization notified pursuant to section 19131 of the Government Code. The review shall occur prior to any review conducted by the Department of General Services. The board shall restrict its review to the question as to whether the contract complies with the provisions of subdivision (a) of Section 19130 of the Government Code *and any additional standards and controls established pursuant to subdivision (a) of this section.* The board may disapprove the contract only if it determines that the contract does not comply.' (Italics added.)

"Subdivision (a) of Public Contract Code section 10337[4] provides in part:

"The State Personnel Board may establish such standards and controls over approval of contracts by the Department of General Services as are necessary to assure that the approval is consistent with the merit employment principles and requirements contained in Article VII of the California Constitution.

"Thus the criteria expressly set forth in subdivision (a) of section 19130 are not exclusive. They also include standards and controls adopted by the Board as necessary to safeguard the `merit employment principles and requirements contained in Article VII . . . .' (Pub. Contract Code, § 10337, subd. (a).) The *Riley/Burum* rule and its exception constitute an authoritative construction of article VII by which the Board is bound. . . . we must assume the Board, in complying with its statutory duty to establish standards and controls, will give effect to decisional explications of the merit employment principles and requirements contained in article VII."

Since we are to assume the existence of civil service employees who are available and qualified to provide professional, technical, and related consultation and services in connection with the establishment and maintenance of "hi-tech" educational centers, no authority appears, even assuming the satisfaction of all of the expressed conditions of subdivision (a), for contracting such services. A contract made without the authority of law in force at the time it is made is absolutely void. (*Pac. Inter-Club Yacht Assn.* v. *Richards* (1961) 192 Cal.App.2d 616, 619; 65 Ops.Cal.Atty.Gen. 467, 469 (1982).) Accordingly, it is concluded that CCF may not, pursuant to or in furtherance of its contract with the chancellor, perform or contract for the performance of such services.

\* \* \* \* \*

---

[4]Public Contract Code section 10362 confers upon the Board the identical powers with respect to consulting services contracts to establish approval standards and controls and to effect compliance review as it exercises under Public Contract Code section 10337 over contracts for services.