[L. A. No. 12475. In Bank.—December 9, 1930.]

F. L. ANDERSON, Appellant, v. MABEL E. EATON, Respondent.

114

Clarence Harden for Appellant.

Crouch & Sanders for Respondent.

WASTE, C. J.—The complaint in this action for attorney's fees contains two counts. The first count sets forth a written contract providing for the payment of a one-third contingent fee and the second, a common count, asks for the reasonable value of services performed. No evidence was introduced in support of the latter count, and we therefore dismiss it from consideration. In conformity with the allegations of defendant's affirmative defense, the trial court found that the contract set out in count one had been procured by fraud, and that it was against public policy and void. Judgment was thereupon entered for the defendant. Plaintiff prosecutes this appeal, contending that the judgment is contrary to law, and that the evidence does not support the finding of fraud.

On February 1, 1926, Oris Eaton, an unmarried adult son of the defendant, met his death while acting within the scope and course of his employment with the San Diego Consolidated Gas & Electric Company. The injuries causing his death resulted from the negligence of the employees of the Benson Lumber Company. As an outgrowth of the untimely death of her son, the defendant became invested with two causes of action—one against the employer Gas Company under the provisions of the Workmen's Compensation Act and the other against the Lumber Company based on negligence. Section 26 of the Workmen's Compensation Act gave to the employer Gas Company

a cause of action against the Lumber Company for any loss sustained by it, or a first lien on any judgment recovered by the employee against the Lumber Company. The plaintiff was the attorney for the insurance carrier of the employer Gas Company on a regular retainer. He also carried on a general practice. As the attorney for this insurance carrier, he investigated the accident and so met the defendant. In the course of his conversations with the defendant, the plaintiff stated that his company admitted its liability under the provisions of the Workmen's Compensation Act and that it would not contest her claim before the Industrial Accident Commission. Defendant testified that plaintiff suggested that she retain him as her attorney to press her claim against the Lumber Company because of his familiarity with the circumstances surrounding the accident, and that five days after the accident she signed the contract here sued on, employing plaintiff on a one-third contingent fee basis. There is evidence to the effect that plaintiff advised the defendant not to employ an attorney to represent her at the hearings before the Industrial Accident Commission in her claim against the employer Gas Company, and not to divulge that he was representing her in her claim against the Lumber Company. At the several hearings before the Industrial Accident Commission, the plaintiff appeared on behalf of the Gas Company and its compensation insurance carrier, and, while admitting liability, apparently contested or questioned defendant's claim as to the degree of dependency. As a result of these hearings, the defendant received an award of $309, although plaintiff, prior to his employment by defendant, had approximated the claim against the employer to be worth $1500. During all of this period plaintiff had been negotiating with the insurance carrier of the Lumber Company for a settlement of defendant's claim for damages, although prior to his employment by defendant he had intimated to her that he would bring suit against the Lumber Company, asking damages in the sum of $40,000 or $50,000. Defendant became dissatisfied with the manner in which her claim against the Lumber Company was being handled, and addressed a letter to the plaintiff discharging him and offering to pay the reasonable value of his services. Defendant thereafter personally negotiated with the

Lumber Company and its insurance carrier, and settled her claim for damages for $3,100, whereupon plaintiff brought this action to recover one-third thereof, or $1,033.33. During the course of the trial, plaintiff introduced evidence tending to show that by reason of his efforts he was in a position, at the time of his discharge, to have settled defendant's claim against the Lumber Company for $4,750.

Even if we accept appellant's contention that the finding of fraud in the procurement of the employment is without support in the evidence, the judgment for defendant must stand, for, as found by the court below, the contract sued on is clearly against public policy and void. One of the principal obligations which bind an attorney is that of fidelity, the maintaining inviolate the confidence reposed in him by those who employ him, and at every peril to himself to preserve the secrets of his client. (Sec. 282, Code Civ. Proc.; *In re Cowdery*, 69 Cal. 32 [58 Am. Rep. 545, 10 Pac. 47].) This obligation is a very high and stringent one. It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. (*In re Boone*, 83 Fed. 944, 954, 955.) By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent. (*Strong* v. *International Bldg. etc. Assn.*, 183 Ill. 97 [47 L. R. A. 792, 55 N. E. 675, 676].)

While the defendant had knowledge that plaintiff was the legal representative of the insurance carrier of the Gas Company and received an annual retainer therefor, plaintiff failed to explain to her wherein the two employments were adverse. As attorney for the defendant, plaintiff could,

and probably did, secure certain confidential information concerning the degree of her dependency upon her deceased son. On the other hand, his representation of the Gas Company's compensation insurance carrier required him to contest defendant's claim before the Industrial Accident Commission, at least upon the issue of dependency. His dual employment thus placed him in a position to use this confidential information to the defendant's detriment. As already intimated, it is immaterial whether or not plaintiff, as counsel for the insurance carrier, actually availed himself before the commission of information received from the defendant while acting as her attorney. The impropriety of the dual employment is readily apparent. Conscience and good morals dictate that an attorney should not so conduct himself as to be open to the temptation of violating his obligation of fidelity and confidence.

Moreover, as counsel for the insurance carrier of the Gas Company, plaintiff was primarily interested in having defendant's claim for damages against the Lumber Company settled for any amount equal to or in excess of the liability [$309] of the Gas Company under the provisions of the Workmen's Compensation Act. As attorney for the defendant, however, it was his duty to secure, either by settlement or suit, as large a sum as possible. This conflict of interests may well have worked to the defendant's disadvantage. Plaintiff, though in good faith intending to discharge his obligation as defendant's attorney, would be in such a position as might have unconsciously caused him to accept an offer of compromise or settlement of her claim against the Lumber Company, rather than run the risk of bringing an action and jeopardizing the Gas Company's right of subrogation. If plaintiff had been representing the defendant alone, he might have concluded to sue the Lumber Company for a large sum of money, as he had previously intimated to the defendant he would do. His duty as counsel for the insurance carrier of the employer Gas Company may have suggested to him, however, the possibility of an adverse judgment, if such action were commenced, which adverse judgment would render the employer's right of subrogation valueless, thus leaving the burden of the Industrial Accident Commission's award on the shoulders of its insurance car-

rier. Such thought or suggestion may well have deterred counsel so situated from instituting such action and thus preclude him from enforcing "to their full extent the rights of the interest which he should alone represent." (*Strong* v. *International Bldg. etc. Assn., supra.*) It is also conceivable that plaintiff's opposition of defendant's claim of dependency before the Industrial Accident Commission may have had an adverse effect upon her claim for damages against the Lumber Company. It is our conclusion, therefore, that the contract sued on, even if not tainted with actual fraud, is, as found by the court below, against public policy and void.

The judgment is affirmed.

Preston, J., Langdon, J., Curtis, J., Shenk, J., Richards, J., and Seawell, J., concurred.