[No. 25998.  *En Banc.*  July 27, 1936.]

THEODORE LIENHARD *et al., Respondents,* v. NORTH-
WESTERN MUTUAL FIRE ASSOCIATION *et al.,*
*Appellants.*[1]

[1]Reported in 59 P. (2d) 916.

*Shank, Belt, Rode & Cook,* for appellants.

*J. Y. Kennedy, S. J. Brooks,* and *Glenn J. Fairbrook,* for respondents.

GERAGHTY, J.—The respondents sustained personal injuries and property damage resulting from a collision between a car in which they were riding and one driven by Archie Burr Marston, in the early morning hours of January 1, 1934. The respondents brought suit against Marston and his wife for the damages sustained and recovered judgment. The judgment being unsatisfied, this action was brought to recover upon a liability insurance policy issued to Marston by the appellants, covering the car driven by him at the time of the accident.

At the trial, the appellants interposed two defenses to the action: First, that Marston was under the influence of liquor while driving his car at the time of the accident, in violation of the terms of the policy; and second, that Marston breached the co-operation clause of the policy, in that he wholly and without cause had absented himself from the trial, after being requested by the appellants to appear. At the close of the case, tried to a jury, counsel for the respondents challenged the legal sufficiency of appellants' evidence. The court ruled that there was no evidence to warrant submitting to the jury the question whether Marston was under the influence of intoxicating liquor.

On the question of Marston's failure to co-operate, the court, with the consent of counsel for the parties, reserved its decision, as a matter of law, upon the facts as they appeared in the record. Thereafter, the

court filed a memorandum decision, in which it ruled as to the second question: First, that failure to co-operate is not ground for the forfeiture of the rights of the assured under the policy; and second, that, in the light of the evidence, it could not conclude that the insured unreasonably refused to co-operate. Judgment was accordingly entered in favor of the respondents.

Upon the issue of Marston's intoxication, the testimony of the appellants tended to prove the following facts: The respondent Lienhard was driving from Seattle to Everett on the Pacific highway in a car owned by the respondent Brown, the other respondents being guests in the car. The highway has two paved strips, each twenty feet in width, with a four-foot graveled space between. Driving north on the east pavement, Lienhard had just passed, on the left, two cars moving in the same direction and was proceeding toward the outer side of the pavement when a car, driven by Marston, approaching from the north, on the west pavement, turned to the east, dashed across the middle graveled strip and into respondents' car, resulting in the damage sued upon.

Marston was accompanied in his car by one Henning Larson, who testified at the trial in this case. He had met Marston and a third man, named Hardin, about three o'clock in the afternoon of December 31st, at the Rex Tavern, a restaurant near the north limits of the city of Seattle, at which beer was sold. They remained in the tavern about ten minutes and had a couple of glasses of beer, then procured six bottles of beer from a beverage store and a pint of whiskey at a drug store, and went to Hardin's apartment. They remained at the Hardins for dinner, consuming half the liquor before dinner and the remainder after dinner.

Marston and the witness left the Hardins' apartment about ten o'clock and drove north on the Pacific highway. They stopped at a tavern for a few minutes and, in the language of the witness, "had a few beers." When pressed, the witness would not say positively that he saw Marston drink, but saw him talking to the bartender. From there, they drove further north to a roadhouse called the Golden Slipper, where they had a couple of glasses of beer. They stayed at the Golden Slipper until midnight. From there, they proceeded further north on the highway, in the direction of Everett, to the Rio Grande, described as a hamburger place and tavern. This place sold beer, but they had nothing to drink there; the proprietress was a friend of the witness, and they merely stopped for a social call. They remained at the Rio Grande until 1:30 in the morning, when they returned toward Seattle. While driving south, the collision occurred. The witness was asleep in the car at the time of the collision and was unable to testify to any incidents immediately preceding the accident.

The liability policy issued by the appellants to Marston, provided that the insurer should not be liable thereunder for any loss or damage accruing while the automobile covered was being operated by any person "who is under the influence of liquor or drugs."

The court withdrew the issue of Marston's intoxication from the jury on the view that, while the evidence disclosed that Marston had been drinking in the afternoon and evening preceding, this did not establish the fact of his intoxication at the time of the accident, about two o'clock in the morning. We are not in agreement with this view. We think the appellants made a *prima facie* case calling for submitting to the jury the issue whether Marston was

so far under the influence of the liquor he had consumed as to be unfit to drive a car, and in arriving at their conclusion, they could properly consider the manner in which Marston was driving at the time of the accident.

It was for the jury to say whether Marston's unaccountable conduct in leaving his own side of a broad highway and driving across the unpaved dividing strip onto the opposite side and into the oncoming car of the respondents, coupled with the prior consumption of liquor, evidenced the degree of intoxication to be characterized as "under the influence of liquor."

■ . "In passing upon the sufficiency of the evidence to take the case to the jury, as we have often said, there is no element of discretion. The court can withdraw the case from the consideration of the jury only where it can be said, as a matter of law, that there is no evidence, or reasonable inference, to sustain a finding of the fact in issue." *MacDonald v. Gillio,* 181 Wash. 673, 44 P. (2d) 783.

As the basis of their second defense in the action, the appellants cite the following provision in the liability policy:

"The insured, when requested by the Company, shall aid in effecting settlements, securing and giving evidence, the attendance of witnesses, and in prosecuting appeals."

The admitted facts bearing upon this contention of the appellants are: The insured, Marston, resided in Seattle and was an employee of the Pacific Telephone & Telegraph Company at the time of the accident. Some time after the institution of the action against him by the respondents, he was transferred by his company to California, and he removed there with his wife.

The case was set for trial January 30, 1935. On December 24, 1934, the appellants' attorneys addressed a letter to Marston, advising him of the setting of his case for trial and suggesting that he drop in at their office shortly after New Year and talk the matter over with them.

Later, the attorneys learned that Marston had gone to California, and on January 10th, wrote to him at Santa Cruz, informing him of the setting of the case and asking that he advise by return mail that he would be present at the trial. He replied to this letter, informing the attorneys that their letter had been forwarded to him and that it would be impossible for him to be at Seattle, due to the lack of finances and the loss of time. His letter closed with, "Please advise and mail me the summons. I want to know if my wife is named in the summons. Yours very truly." In response to this letter, one of the attorneys for appellant wrote Marston as follows:

"Dear Mr. Marston:

"I received your letter of January 12th and am enclosing herewith copy of the complaint in the action instituted against yourself and wife.

"You will note that H. V. Larson and his wife were made defendants in this action but they were never served with summons and complaint and so they will not be parties to the action at the time of the trial.

"However, as you can note from the heading in the complaint, your wife is a party to the action and it will be necessary to interpose a defense in her behalf; also it will be necessary that you be here at the time of trial.          Yours very truly,

"SHANK, BELT & RODE,
"By:                              "

January 22, the attorneys telegraphed Marston as follows: "Will pay your travel expenses to trial and return Wire if you will come." Thereafter, the at-

torneys wrote Marston confirming this telegram and saying,

"As you appreciate, it will be necessary for you to appear as a witness if a defense is to be made in this case. Therefore, we will expect to see you in Seattle in sufficient time before the trial date, January 30th, so that we may go over the facts of this accident."

January 25th, Marston and wife responded by telegraph:

"Received your registered letter and wire enclosed I am doing special work & it is impossible to leave without substituting another in my place Is a postponement possible However we can not come unless wage loss as well as all other expenses are paid including wife—A. B. MARSTON MRS. VIOLA MARSTON."

In answer to this telegram, the attorneys wired Marston on January 25th: "Continuance impossible Will pay only your expenses No time loss."

In the contract of insurance issued by appellants, they agreed:

"To Serve the Insured upon notice of such bodily injuries or death, or damage to or destruction of property (a) in investigating cases reported hereunder, (b) in conducting negotiations for the settlement or in contesting any claims made on account of such cases and (c) in defending any suit brought to recover damages on account of such cases unless or until the Company may elect to effect a settlement of such suit. The Company is hereby constituted the agent of the Insured in all matters pertaining to the investigation, adjustment and payment of claims for which the Insured is liable."

Upon the institution of the suit against Marston, the appellants, through their attorneys, undertook the defense of the action, with a written reservation of liability, however, signed by Marston. There is

nothing in the record, and appellants make no claim, indicating that Marston, before going to California, failed in any way to cooperate. When the case came on for trial, appellants' attorneys were in court representing Marston and his wife, and continued to participate until after the selection of the jury. In the impaneling of the jury, they exercised two peremptory challenges. It was only after the selection of the jury that they announced in open court their withdrawal from the case.

As we have seen, the first reason assigned by the trial court for ruling against appellants' defense of lack of cooperation was that the failure did not constitute a ground for the forfeiture of the rights of the assured under the policy. This position is untenable under our holding in *Eakle v. Hayes*, 185 Wash. 520, 55 P. (2d) 1072, recently decided after an *En Banc* hearing.

We are of the opinion, however, that the second ground assigned by the court for its holding against the appellants' contention—that, under the evidence, the court could not conclude that the insured unreasonably refused to cooperate—should be sustained. In *Eakle v. Hayes, supra,* it was declared to be the well-settled rule in this state that, if the insured, under a policy such as we have here, could not have recovered against the insurer, then the party injured could not recover. In the case before us, the respondents' rights are derivative, through Marston's contract with the appellants. The respondents have no greater right than Marston himself would have if he were suing upon the policy. The policy imposed certain conditions, one being the quoted provision with respect to cooperation. While we held in the *Eakle* case that the breach of the cooperation clause by the insured would defeat recovery by the injured party,

whether or not there has been a breach in a particular case is to be determined from a consideration of all the facts and circumstances.

In the *Eakle* case, the insured left for parts unknown, and a most diligent search on the part of the insurance company could not discover his whereabouts. Nothing within its power was left undone. In the present case, the insured did not run away, but necessarily removed to California on assignment by his employer. While it may be inferred that Marston did not inform the appellants' attorneys of his removal to California, they could have learned of his whereabouts by inquiring at the telephone company. But they did know where he was as early as the tenth of January, twenty days before the date set for trial. They knew that he was employed and could not leave his work without financial loss, and that he could not come without incurring expense. After some correspondence, they finally advised him by telegraph that they would pay only his traveling expenses and would not pay for loss of time.

In passing upon a somewhat similar case, the supreme court of Alabama, in *George v. Employers' Liability Assurance Corp.*, 219 Ala. 307, 122 So. 175, 72 A. L. R. 1438, said:

"If the assured in the ordinary pursuit of his business, and not to evade his duty to the insurer, removed to another city, away from the process of the court, but did not fail to give insurer such information as he possessed, nor to render aid in getting up evidence, when called upon, and did not refuse to testify, but merely failed to come to court at his own expense, when there were numerous persons known to the insurer who had the opportunity to know and testify to what assured knew, and when the policy provides that insurer shall defend the suit at its own cost, he is not thereby in default of his duty in cooperation. There was no tender of expenses by the insurer. It

is not claimed that there was a want of cooperation before assured left the city of Birmingham. He should have given his address to insurer before leaving, but the insurer ascertained his address in time to communicate with him before the trial and take his deposition if desirable. The case was set for January 6, 1926, insured ascertained his address early in December before, and wrote him by registered mail December 21st. The letter requested his return to aid in the defense. It did not offer to pay his expenses. No effort was made to take his deposition, nor offer to do so, nor reason assigned for not doing so. The record does not show any lack of information desired by insurer, but only advised him it was necessary for him to be present at the trial, in default of which they proposed to annul the policy.''

The appellants were compensated for the risk assumed in the policy and for the services agreed to be given in investigating the case and in defending any suit brought to recover damages. This obligation included any expenses incurred in procuring the necessary attendance of witnesses. It would be imposing an undue hardship on an insured, who had paid for protection, to require that, notwithstanding the necessities of his employment, he should remain in the place where sued awaiting the trial of his case.

It will be noted that, while the appellants informed Marston by wire that they would pay his own expenses but not his wife's, they made no tender of the expenses to enable him to come, should he lack ready funds. In his letter of January 12th, Marston requested to know if his wife was made a party to the action. To this, appellants' attorneys answered that she was a party, and that it would be necessary to interpose a defense in her behalf. It would not be wholly unreasonable for Marston, unfamiliar with the law, to assume that his wife's presence would be necessary and to expect

that her expenses, as well as his own, would be provided.

Apart from this, the appellants took no steps to secure the deposition of Marston. After their correspondence with him had shown reluctance on his part to return, and since his presence was needed as a witness only, it would seem that they were lacking in diligence in not taking his deposition. While, at the trial, they applied for, and were denied, a continuance of sixty days, this request was to enable them to have Marston present, not for time to take his deposition. We cannot assume from the record that he would have refused to testify had a commission issued.

Concluding that the trial court erred in withdrawing the case from the jury on the issue of intoxication, the judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

MAIN, MITCHELL, TOLMAN, BEALS, and BLAKE, JJ., concur.

HOLCOMB, J. (dissenting)—At the oral argument before the whole court, counsel for appellants, in effect, conceded that the trial judge was right in stating that there was nothing more than a bare suspicion that Marston, the insured, was under the influence of liquor at the time of the accident. Neither counsel for appellants nor respondents argued the matter before the court *En Banc,* both apparently assuming that this court would consider that issue unimportant and correctly decided. From the record in this case, it certainly is plain that there was nothing more than a mere scintilla of evidence that Marston was drunk or under the influence of liquor at the time of the collision, which is not legally sufficient.

In all other respects, as to the main issue, I concur with the majority.

The judgment should be affirmed. I therefore dissent.

MILLARD, C. J. (dissenting)—The trial court correctly withdrew the case from the jury on the issue of intoxication. The judgment should be affirmed.

STEINERT, J. (concurring with the majority)—In concurring fully with the majority, I do not for a moment concede that the proof of Marston's intoxication rested upon a bare suspicion, as suggested in one of the dissenting opinions. Nor do I recall that appellants' counsel, in the oral argument, made any such admission, in fact or in effect.

[1]Reported in 59 P. (2d) 914.