[Civ. No. 18973. Second Dist., Div. One. Nov. 12, 1952.]

FORREST M. HAMMETT, Plaintiff and Appellant, v. LUCILLE M. McINTYRE, Defendant and Appellant; J. B. McINTYRE, Respondent.

Demler & Eckert and Edison J. Demler for Plaintiff and Appellant.

Joseph A. Ball, Ball, Hunt & Hart for Defendant and Appellant.

Parker, Stanbury, Reese and McGee and Richard E. Reese for Respondent.

WHITE, P. J.—Forrest M. Hammett brought an action for personal injuries sustained in a collision between the automobile in which he was riding and a Pontiac automobile operated by Lucille M. McIntyre and owned by the defendant J. B. McIntyre. It was charged that Lucille M. McIntyre was operating the Pontiac automobile with the consent of the owner, J. B. McIntyre. The law firm of Parker, Stanbury, Reese and McGee filed an answer on behalf of both Lucille M. McIntyre and J. B. McIntyre which included a denial that the Pontiac automobile was being operated by Lucille M. McIntyre with the knowledge or consent of J. B. McIntyre.

Trial without a jury resulted in a judgment in favor of the plaintiff for the sum of $25,932.19 against Lucille M. McIntyre only, the court finding that the Pontiac automobile was not being operated by her with the consent, knowledge or permission of the owner, J. B. McIntyre.

Plaintiff appeals from the judgment, attacking the finding of no permissive use as not supported by the evidence and urging that a new trial should have been granted. Defendant Lucille M. McIntyre also appeals upon the ground that she was denied a fair trial; that her interests were prejudiced because she was represented by counsel for an insurance company whose interests were adverse to hers; and that the trial court abused its discretion in denying a new trial.

Defendant J. B. McIntyre is the father of George McIntyre. George McIntyre and Lucille McIntyre are husband and wife. J. B. McIntyre is the owner and operator of a meat market in Long Beach. George is an employee of his father, and was in his employ at the time of the accident, which took place on September 8, 1950. At that time there was in effect

a policy of liability insurance issued by Farmers Insurance Exchange indemnifying Lucille and George as owners of a 1939 Plymouth automobile against claims for injury to one person to a limit of $10,000 and for injury to more than one person to a limit of $20,000. J. B. McIntyre, father of George, was the owner of a 1946 Pontiac sedan, which he used in his business. He was insured against liability by American Associated Insurance Companies to a limit of $25,000 for injury to one person and $50,000 for injury to more than one person, the policy containing the usual provision extending coverage to a person other than the named insured when such person was operating the automobile with the permission of the former.

These two appeals arise out of the sole factual issue presented to the trial court, to wit, whether at the time of the accident Lucille McIntyre was operating the Pontiac automobile with the permission of her father-in-law, J. B. McIntyre. It appears that J. B. McIntyre took an extended vacation commencing in July, 1950, leaving his son George in charge of the meat market. It is conceded that George had his father's permission to use the Pontiac in connection with the operation of the business, but whether such permission went any farther than this, either expressly or by implication, is a question upon which the parties are in sharp disagreement, and an extended consideration of the evidence is necessary. Further, in considering the contention that the court erred in denying a new trial, it is necessary to set forth a detailed statement of the proceedings before and at the trial as well as the showings made by the parties on the motion for new trial.

There is apparently no dispute as to the following facts: On the evening of September 6, 1950, the Plymouth automobile owned by George and Lucille had a flat tire. George and Lucille thereupon drove from the market to their home in the Pontiac owned by the father. The following morning they returned to the market in the Pontiac. Leaving George at the market, Lucille returned home in the vehicle. In the evening of that day, September 7, Lucille returned in the Pontiac to the market and found that George had already left the market in the Plymouth. Lucille had a companion in the car with her. She and her companion had been drinking and did not arrive at the market until it had been closed. Finding the market closed and George gone, Lucille and her

companion repaired to a bar. This was on the evening of September 7. The accident occurred at 3 a. m. on September 8.

After summons and complaint in this action were served upon J. B. McIntyre and Lucille, the matter was referred to American Associated Insurance Companies, the insurer of J. B. McIntyre. The claim department of the insurer wrote to Lucille as follows:

"We are writing to advise that the amount prayed for in Superior Court action entitled 'Forrest M. Hammett v. Lucille M. McIntyre, J. B. McIntyre, et al.' is in the total sum of $83,000.00 and therefore is in excess of the limits of your policy with this Company.

"The amount sued for in the complaint is no indication of the amount which would be awarded if judgment were rendered in favor of the plaintiff, but because plaintiff is asking for a larger amount than is covered by your policy, we wish to notify you that you have a right to employ counsel of your own choosing and at your own expense, to represent you as to your uninsured interests.

"We have referred this action to our Attorneys, Parker, Stanbury, Reese and McGee of 1217 Foreman Building, Los Angeles, who will take all steps necessary to provide an adequate defense. *It is not necessary in our opinion, that you go to the expense of employing counsel to be associated with our attorneys and we are writing this letter, not for the purpose of suggesting or advising that you take this step, but merely to let you know that you have the right to do so if you wish.*" (Emphasis added.)

Parker, Stanbury, Reese and McGee prepared a joint answer to plaintiff's complaint on behalf of J. B. McIntyre and Lucille. This answer was verified by J. B. McIntyre only. It contained a denial of the allegation of the complaint that Lucille was driving the Pontiac with the knowledge, consent and permission of J. B. McIntyre. On the morning of the trial, September 5, 1951, George and Lucille McIntyre attended at the office of Parker, Stanbury, Reese and McGee, and Lucille executed a substitution of attorneys, substituting R. S. Harrington as her attorney. Mr. Harrington was an associate of the firm of Parker, Stanbury, Reese and McGee. At the trial it was stipulated that the accident was caused solely by the negligence of Lucille. There can be no question as to the good faith and advisability of this stipulation. A jury was thereupon waived by all parties and the trial proceeded before the court upon the issues of damages and whether

Lucille was operating the Pontiac with the permission of J. B. McIntyre. The trial court found that she had no such permission, upon her testimony given under section 2055 of the Code of Civil Procedure. No evidence was offered for the defense. The court found and awarded damages of $25,932.19 against Lucille only.

It is charged in the opening brief of appellant Lucille McIntyre that Mr. Reese and Mr. Harrington, of defense counsel, caused George McIntyre to leave the courtroom and remain away so that he could not be called to testify that J. B. McIntyre had given him permission to use the Pontiac without any restrictions and that he in turn had permitted his wife to use it. The charges and countercharges in this connection have no bearing on the decision of the cause. The plaintiff, after examining Mrs. Lucille McIntyre and presenting evidence of damages, rested his case, and submitted the issue of permissive use to the court.

When called as a witness under section 2055 of the Code of Civil Procedure, Lucille McIntyre testified that J. B. McIntyre when he left on vacation had left her husband and two other butchers in charge of the business; that she helped her husband in the evening with the "book work" "most evenings," driving to the market in the evening in their Plymouth and arriving around 6 in the evening; if their Plymouth was in working order they would drive in it together to work in the morning and she would then drive home and return in the Plymouth in the evening; that she had used the Pontiac twice to go to the bank; that she did not know whether her husband knew which car she was using when she went to the bank; that whenever she and her husband rode together her husband did the driving; that he never told her she could not use the Pontiac, nor had she told him she had or would use it; that on the evening of September 6 she and her husband came home from the market in the Pontiac because the Plymouth had a flat tire; that she and her husband returned to the market the following morning; the Plymouth then had a flat tire; that there was no discussion between her and her husband as to which car she was to take, but she returned home in the Pontiac. Before leaving for the market in the evening, Lucille and her companion, Mrs. G——, had "possibly three" highballs at Lucille's house. They proceeded to the market, arriving some time after 7 p. m., and found George had gone and the market was closed. Beyond this point Lucille does not remember. Other testi-

mony, however, of undoubted verity, indicates, as heretofore stated, that Lucille and her companion proceeded to a bar and were still trying to find their way home when the collision occurred at 3 a. m. the following morning. On cross-examination Lucille testified that she had never driven the Pontiac before her father-in-law went on vacation; that she knew the Pontiac was kept on the premises for business use only and that she was not supposed to drive it for pleasure; that she was not employed in the market and her purpose in driving to it was to help her husband so he could get home early. She further testified that she drove to the market on the evening of September 7 to find out why her husband had not yet come home, and also that her father-in-law had never given her permission to use the Pontiac. Minor discrepancies in her testimony developed on redirect and recross-examination and by reference to her testimony taken by deposition.

We shall consider first the appeal of defendant Lucille M. McIntyre. Her position, succinctly stated, is that her counsel in reality abandoned her as their client for the avowed purpose of protecting some third party (American Associated Insurance Companies) which was not a party to the action, and that appellant Lucille M. McIntyre was thereby prevented from having a fair trial on the issue of permissive use of the Pontiac automobile.

It is conceded that counsel for this appellant and her co-defendant J. B. McIntyre had been employed by the latter's insurance carrier to represent her in this action. Under these circumstances, counsel no doubt felt that they were under the duty to represent the interests of the insurance company as well as the interests of the appellant. Ordinarily, there is no conflict of interests involved in such a situation, but that such conflict may arise seems quite obvious from the claims made by the appellant Lucille M. McIntyre in this proceeding.

In assuming to act as counsel for appellant in this action, the firm of Parker, Stanbury, Reese and McGee assumed toward her the high duties imposed by statute (Bus. and Prof. Code, § 6068) and by the rules governing professional conduct (Rules of Prof. Conduct, 33 Cal.2d 27-31), and whenever counsel had reason to believe that the discharge of those duties would conflict with the discharge of their duties to the insurance carrier, it became the duty of such counsel to take appropriate steps to terminate the relationship (*Pennix*

v. *Winton*, 61 Cal.App.2d 761, 773 [143 P.2d 940, 145 P.2d 561]).

From the counteraffidavit of Attorney Richard E. Reese, one of counsel for respondent J. B. McIntyre, filed in opposition to the motion for a new trial, it is manifest that appellant Lucille M. McIntyre's counsel did not consider there was a conflict of interest between her and respondent J. B. McIntyre or his insurance carrier for the reason, as set forth in the affidavit, ''That the said Lucille M. McIntyre was at all times fully advised of and knew that J. B. McIntyre and the American Automobile (sic) Insurance Company contended that under the undisputed facts there was no permissive use at the time of the accident. She also knew, because she had been told, that the action was going to be defended upon the issue of no permissive use as far as J. B. McIntyre was concerned.''

It is further averred in the aforesaid affidavit that the reason for substituting Attorney Harrington as counsel for this appellant was, ''That in order to keep separate the identity of the defendants before the jury for psychological reasons, we desired to have Mr. Harrington represent her before the jury and that affiant would continue to represent J. B. McIntyre in the hope that such strategy would help keep the damages reasonable and in the hope that a directed verdict could be obtained for J. B. McIntyre, getting him out of the case entirely before it got to the jury and leaving her as the sole defendant in the action at the time the case would be decided by the jury. The said Lucille M. McIntyre, in the presence of her husband, stated that the arrangement as outlined to her was perfectly satisfactory and thereupon executed the substitution of attorneys, placing Mr. Harrington in the case as her counsel of record. She stated to affiant in the presence of her husband that she knew she had no business driving the car at the time of the accident and that she was ''extremely sorry about the whole thing'' and ''That had affiant known that the matter would finally go to trial before the Court without a jury, Mr. Harrington would not have been substituted into the case for Mrs. McIntyre but affiant would have continued to represent both Lucille and J. B. McIntyre for the reason that both Lucille M. McIntyre and J. B. McIntyre knew full well of the fact that the American Automobile Insurance Company was contending that she was driving the car without the permission of J. B. McIntyre and she

knew full well that J. B. McIntyre was contending that she was driving the car without his permission.''

The foregoing averments are in the main contradicted by appellant in her affidavit filed on the motion for a new trial. In her affidavit appellant states that on the morning of the trial she was introduced to Attorney Reese of the firm of Parker, Stanbury, Reese and McGee; that Attorney Reese introduced her to Attorney Harrington, stating that the latter was ''going to represent affiant inasmuch as there was some issue or conflict of interest between herself and J. B. McIntyre; that at said time and place affiant was advised by Mr. Reese that the evidence against her was overwhelming and he was going to put an argument about the father not being involved and going to admit it was affiant's fault that the accident occurred; affiant was asked by Mr. Reese if that was all right and affiant stated, 'I guess so'; Harrington gave affiant no advice other than to testify to the truth;

''That when the case proceeded to trial Mr. Harrington gave affiant no additional advice concerning the case nor did he discuss with affiant anything concerning the issues or other outcome of the case;''.

The long and firmly established reputation of the firm of Parker, Stanbury, Reese and McGee at the bar for ethical conduct and fidelity to duty warrants the assumption that in this proceeding their intentions and motive were honest, but honesty of purpose, intention and motive is not the test for determining the course an attorney must pursue when confronted with a situation wherein he is faced with representing claims inconsistent with those of his client, or with conflicting claims of two clients. When such a situation arises, an attorney must terminate the relationship of attorney and client with the client whose interests would prevent the attorney from devoting his entire energies in that client's behalf and to that client's interests (*McClure* v. *Donovan*, 82 Cal.App.2d 664, 666 [186 P.2d 718]; *Anderson* v. *Eaton*, 211 Cal. 113, 116 [293 P. 788]).

As heretofore set forth, appellant herein was the insured under a policy issued by Farmers Insurance Exchange under the terms of which said appellant was covered up to $10,000 while she was driving the Pontiac automobile belonging to defendant J. B. McIntyre at the time of the accident, whether she was driving said vehicle with the permission of J. B. McIntyre or not. However, under the policy issued to defendant J. B. McIntyre, he was insured against liability by American

Associated Insurance Companies up to a limit of $20,000 for injury to one person, and this coverage was extended to appellant Lucille M. McIntyre provided she was operating the Pontiac automobile with the permission of the named insured.

The honesty of purpose, intention and motive of Parker, Stanbury, Reese and McGee is indicated by the fact that according to the aforesaid affidavit of Attorney Reese of that firm, ''That when the summonses and complaints were served upon the defendants J. B. McIntyre and Lucille M. McIntyre the American Automobile Insurance Company requested the Farmers Insurance Exchange to take over the defense of the action on behalf of Lucille M. McIntyre and to engage attorneys to represent her for the reason that the American Automobile Insurance Company had concluded that under the undisputed facts she was not driving the vehicle with the permission of J. B. McIntyre. The Farmers Insurance Exchange refused to take over the defense for Lucille M. McIntyre and refused to engage attorneys to represent her in the lawsuit. The said American Automobile Insurance Company, because of the fact that the complaint alleged that Lucille McIntyre was driving the car with the permission of J. B. McIntyre and it was therefore the obligation of the American Automobile Insurance Company to furnish a defense of the action on her behalf, did refer the defense of the action to Parker, Stanbury, Reese & McGee.

''That on December 14, 1950, the Farmers Insurance Exchange and its general counsel, Mr. Robert Early, were notified in writing by the firm of Parker, Stanbury, Reese & McGee that the trial of this action had been set on September 5, 1951, at 9:15 A. M. in Department One of the Los Angeles Superior Court. The said Robert Early and the Farmers Insurance Exchange were further notified in writing on the same day and in the same letter that their assured, Lucille M. McIntyre, and the assured of the American Automobile Insurance Company, J. B. McIntyre, were both served with notices for perpetuation of testimony in regard to insurance polices in effect at the time of the accident. The said Robert Early and the Farmers Insurance Exchange were requested to advise Parker, Stanbury, Reese & McGee what they intended to do about the case of Lucille M. McIntyre. The said Robert Early did not answer the letter in writing, nor did the Farmers Insurance Exchange, but by telephone call from the firm of Early, Maslach, Foran and Tyler, general counsel for the Farmers Insur-

ance Exchange, Parker, Stanbury, Reese & McGee were informed that they intended to do nothing about the case."

Now, however, when by reason of the judgment rendered herein on the issue of permissive use, Farmers Insurance Exchange finds itself confronted with the obligation of paying $10,000 upon the judgment for $25,932.19 rendered against appellant Lucille M. McIntyre, we find them earnestly, vigorously and eloquently seeking to vindicate the right of said appellant to have independent legal advice. And, as usual in cases of a controversy such as this between two insurance companies, we find the insured, appellant Lucille M. McIntyre, caught in the middle thereof. Had Farmers Insurance Exchange accepted their obligation when it was tendered them by the law firm of Parker, Stanbury, Reese and McGee, their insured, appellant herein, would have had the independent legal advice to which she was entitled and the issue with which we are here concerned would not have arisen. This is not intended as any criticism whatsoever of the law firm of Ball, Hunt and Hart who now represent appellant Lucille M. McIntyre. They entered the litigation only after the judgment was rendered and were not parties to the aforesaid actions of Farmers Insurance Exchange.

We have concluded that the judgment must be reversed and the cause set at large for a new trial. A review of this entire proceeding impresses us that, so far as appellant Lucille M. McIntyre is concerned, there is an absence of that element of fairness which is essential to due process.

■ We are persuaded that since the complaint alleged that appellant was driving the Pontiac with the permission of J. B. McIntyre, the insured of American Associated Insurance Companies, and the insured contended he had given no such permission, there arose, under the facts of this case, a possible or potential, if not actual, conflict of interest between the insured and appellant driver of the vehicle at the time of the accident in question as to the issue of permissive use. The advice to waive a jury and to stipulate that the accident in question was solely caused by the negligence of appellant Lucille M. McIntyre should have been given to her by counsel not obligated to uphold the contention of defendant J. B. McIntyre that appellant was driving the vehicle in question without his permission. And if the American Associated Insurance Companies were obligated under their policy of insurance to provide counsel for appellant, that counsel should have been an attorney not associated

with the firm of lawyers representing the insurance company. At the trial the plaintiff called appellant herein under section 2055 of the Code of Civil Procedure. She was cross-examined at considerable length by Attorney Reese, one of the lawyers representing her father-in-law, J. B. McIntyre and the insurance company, and who, up to the morning of the trial had represented her. That this cross-examination was conducted with the evident purpose of establishing that the insured defendant J. B. McIntyre did not give her permission to drive the Pontiac is manifest. Appellant at the time was represented by an associate of the attorneys representing the American Associated Insurance Companies, and he asked her only one question and that was as to whether she sustained some kind of head injury in the accident. Appellant frankly admitted that she had no contact with the insured defendant J. B. McIntyre and that her consent came from her husband who was the son of J. B. McIntyre. Appellant's husband, who admittedly had permission to use the Pontiac, was not called to testify whether or not that permission was plenary and without restrictions upon its use, and whether he had permitted his wife to use the vehicle. Upon a retrial, appellant, with the aid of independent legal advice, will be permitted to present whatever evidence she may have upon the issue of permissive use, including the testimony given by the insured defendant J. B. McIntyre in his deposition taken in preparation of the motion for a new trial, wherein the following appears:

"Q. Did you have any conversation with him (appellant's husband) upon your leaving as to the use of your Pontiac? A. None other than he could use the car for business purposes.

"Q. Did you place any restriction or tell him it could not be used for anything other than business? A. No.

. . . . . . . . . . . . . . . .

"Q. It was your intention in so saying, that he was to use the Pontiac if he should so desire to go to and from home, is that true? A. That is true."

These and other considerations to us make it appear necessary, upon the theory that good law and good morals should be one and inseparable, that in the interests of justice and fairness a retrial should be had. Without deciding whether a correct decision has been rendered in this particular case, to us it seems imperative that the fairness and purity of trial procedure is of paramount importance.

In view of what we have herein stated, it becomes unnecessary to consider or decide other issues raised on the appeal of plaintiff Forrest M. Hammett for the reason that upon a retrial the issue of permissive use will probably not be determined upon the limited testimony adduced at the former trial.

For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

Doran, J., and Drapeau, J., concurred.