[No. 34819. *En Banc.* February 11, 1960.]

PETER VAN DYKE *et al., Appellants,* v. THEODORE WHITE,

*Defendant,* MAYFLOWER INSURANCE EXCHANGE,

*Respondent.*[1]

[1]Reported in 349 P. (2d) 430.

*Morrison, Lake, Cael & Huppin (Gordon E. Lake,* of counsel), for appellants.

*Palmer, Willis & McArdle,* for respondent.

FOSTER, J.—Van Dyke and wife, plaintiffs below, appeal from a judgment dismissing a writ of garnishment against the Mayflower Insurance Exchange.

The controversy revolves around an automobile accident in January, 1955, in which the appellants' car was struck from the rear by one driven by T. R. White, who had a standard automobile liability insurance policy written by respondent, Mayflower Insurance Exchange. The policy contained the standard provisions requiring notice to the company within sixty days of all accidents; co-operation with the insurer in the defense of all actions; and a provision requiring the insurer to defend, at its expense, all actions brought against the policyholder. Such provisions were expressly made conditions precedent.

Within ten days after the accident, the policyholder's lawyer gave the insurance company notice of the accident, which notice had been supplied by the Van Dykes. Respondent denied liability because of the insured's personal failure to give notice of the accident, and refused to discuss settlement respecting Van Dykes' claim.

White left the state, but returned in 1957. Thereafter, Van Dykes sued White and wife and served both personally in Chelan county. White delivered the summons

and complaint to the respondent, which employed counsel to defend him.[2] Conferences ensued between White and his attorneys who served and filed an answer to the complaint. White informed the respondent that he would cooperate and attend the trial which was set for December 9, 1957.

On September 11, 1957, Mayflower Insurance Exchange notified White of a reservation of its rights, stating that, although Mayflower was undertaking the defense, it was not thereby admitting any liability under the policy. The reservation letter contained the following specifications of reasons:

" . . . to have the insured give timely notice or notice of any kind of any accident and/or give a report of any accident and/or fully cooperate in the defense of this action including the right to have the insured attend and testify at the trial and assist in the preparation for trial and/or attend any hearings or depositions or settlement of this action."

The cause was tried in White's absence, resulting in a judgment for the appellants which they failed to collect. Whereupon, appellants caused a writ of garnishment to be served upon the insurance company, which, by answer, denied indebtedness. This was controverted by the appellants. The issue thus made came on for trial before a jury. Respondent's challenge to the sufficiency of the evidence was sustained and the writ dismissed, from which judgment the Van Dykes appeal.

 The court took the case from the jury solely because of White's breach of the co-operation clause. The court held that there was sufficient evidence to go to the jury on compliance with the notice requirement. Appellants argue that the defense of non-co-operation must be affirmatively pleaded and that evidence of such defense is not admissible under a general denial. The contention is without merit. *Gill v. Mass. Bonding & Ins. Co.,* 158 Wash. 290, 290 Pac. 698.

---

[2]Counsel who represent the respondent in this appeal did not participate in the trial or have any association with the trial counsel.

█ Appellants further argue that the burden of proving breach of the policy provisions was upon the respondent, but that argument overlooks the distinction between conditions precedent and conditions subsequent. The policy made the performance of all provisions a condition precedent to any action on the policy. The notice and co-operation clauses were within this category, and the burden of proving compliance was on the appellant. *Port Blakely Mill Co. v. Hartford Fire Ins. Co.,* 50 Wash. 657, 97 Pac. 781. See, also, *Shawnee Fire-Ins. Co. v. Knerr,* 72 Kan. 385, 83 Pac. 611, rehearing denied 72 Kan. 389, 83 Pac. 613; 20 Appleman, Ins. Law and Practice, 149, § 11416.

█ Appellants argue that the court erred in taking the case from the jury because there was evidence of substantial performance of the co-operation clause, but we think the evidence is undisputed that White deliberately refused to appear, aid, and testify at the trial and actually left the state, for which no excuse is offered. The breach of the co-operation clause is clear and beyond the range of legitimate controversy. This signally distinguishes *Lienhard v. Northwestern Mut. Fire Ass'n,* 187 Wash. 47, 59 P. (2d) 916. Failure to attend and testify was there held not in itself to be noncompliance, for the surrounding circumstances showed a reason for nonattendance. The reasonableness of the failure to co-operate was the crux of that case, but here no reason is advanced for White's failure in this respect.

█ Appellants argue that the court erred in failing to submit the case to the jury because there was no showing that the respondent was prejudiced by the insured's failure to co-operate; but that argument completely overlooks the terms of the policy which make compliance with all policy terms a condition precedent. Chief Judge Cardozo for the New York court of appeals in *Coleman v. New Amsterdam Cas. Co.,* 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443, correctly stated:

"The plaintiff makes the point that the default should be condoned, since there is no evidence that co-operation, however willing, would have defeated the claim for damages

or diminished its extent. For all that appears the insurer would be no better off if the assured had kept its covenant, and made disclosure full and free. The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which obligation is dependent."

*Sears, Roebuck & Co. v. Hartford Acc. & Indemnity Co.,* 50 Wn. (2d) 443, 313 P. (2d) 347, is in accord.

If a party has breached a contract condition precedent, neither he nor one standing in his shoes may maintain an action on it, and prejudice or the lack of it is immaterial. Only a waiver of such breach or estoppel to assert it by the defendant can remove this fatality.

■ Respondent argues that appellants' failure specially to plead a waiver by the appellants forecloses the introduction of evidence on that issue. But this is not so if cancellation of the policy is the defense relied on by the insurer. All parties knew of the existence of the policy, and respondent's answer denying liability put the cancellation of the policy in issue, although perhaps less explicitly than advisable. The new matter in respondent's answer was controverted, and it was not necessary, although it is better under existing practice, specifically to plead waiver. This view is sustained in *Olympia Brewing Co. v. Pioneer Mut. Ins. Ass'n,* 53 Wash. 16, 101 Pac. 371; and *Walker v. Home Indemnity Co.,* 145 Cal. App. (2d) 318, 302 P. (2d) 361.

Appellants complain of the court taking the case from the jury and holding, as a matter of law, that there was no substantial evidence of abandonment by respondent of its defense of non-co-operation. Respondent continued to defend the action against White after it knew of his absence from the state and of his intention not to attend nor to testify. The claim is that, although respondent at the opening of the trial declared a reservation of its rights to deny liability on the policy, such declaration was not enough.

Respondent's continuance of the defense constituted an abandonment of its claim of non-co-operation, it is argued, because a mere declaration at the trial or even notice to the insured would not suffice to prevent a waiver. Appellants claim only an agreement between insurer and insured reserving such rights would suffice where the defense is based on breach of a policy condition rather than the scope of policy coverage.

Respondent contends that notice to the insured of a reservation of rights is sufficient to prevent a waiver by its continued defense of the action.

Neither argument need be considered because respondent failed even to notify White of a reservation of rights under the co-operation clause after it became clear that he would not return for the trial.

*Associated Indemnity Corp. v. Wachsmith,* 2 Wn. (2d) 679, 99 P. (2d) 420, 127 A. L. R. 531, set forth the requirements necessary for an insurer to reserve its rights to deny liability. The court said:

"There is nothing in the statute or the cases on this matter . . . which requires such notice on the part of an insurer, where it desires to reserve the right to contest liability under the policy, to be in the form of a nonwaiver agreement, or in any particular form. All that seems to be required is notice *to the insured* that the insurer will defend under a reservation of its rights." (Italics ours.)

In *Basta v. United States Fidelity & Guaranty Co.,* 107 Conn. 446, 140 Atl. 816, upon which this court relied in the *Wachsmith* case, it was said:

". . . An insurer is not estopped to set up the defense that the assured's loss was not covered by the contract of indemnity by the fact that the insurer participated in the action against the assured, if at the same time it gives notice to the assured that it does not waive the benefit of such defense. . . ."

Here there is no evidence that, after discovering that White declined to co-operate, the insurer notified him that it defended the action under a reservation of its denial of liability because of the breach of the co-operation clause.

608

Without agreement or notice of reservation, the insurer's continued control of the defense of the policyholder constituted a waiver of its defense. Lack of compliance therewith prevents respondent from subsequently asserting nonliability based on the defense it has thus waived.

■ Although respondent did serve both Mr. and Mrs. White with a notice of reservation of rights in September, 1957, such notice is not applicable to a subsequent breach of a policy requirement. The co-operation clause was breached two months later.

■ Respondent's acts after the breach of the co-operation clause must be examined. Respondent's attorney, after hearing of White's return to Oklahoma, advised him by letter of the trial date and requested his attendance. He never replied. A few days before the trial, respondent's attorney, with the help of a deputy sheriff of Chelan county, again communicated with White. The deputy sheriff, at respondent's request, telephoned White, assured him he would not be arrested, and again requested his presence at the trial. White again stated he had no intention of attending. At the very start of the trial, respondent's attorney declared to the court and appellants' counsel that respondent was defending with a reservation of rights as between the insurer and insured White based on the breach of the co-operation clause. Thereupon, plaintiffs' counsel advised that the plaintiffs were at a disadvantage in the trial because of White's absence and specifically consented to any continuance necessary to secure White's attendance. Counsel for the respondent insurance company deliberately rejected a continuance, and voluntarily elected to try the cause in White's absence. This was the total of respondent's acts relevant to the breach of the co-operation clause and notice of reservation of rights with regard thereto.

From these acts respondent concludes that the insured was "served with a notice of reservation of rights." We do not agree, for it is clear that White was never notified of any reservation of rights after September 1, 1957.

Respondent relies on *Eakle v. Hayes*, 185 Wash. 520, 55 P. (2d) 1072, in which it was held that an insurer who continued to defend an action after the insured had breached the co-operation clause was not estopped from denying liability based on the insured's breach, even though there had been no agreed reservation of rights and the insured never received actual notice of such reservation. However, in that case the court recognized the principle which controls here. The court said:

"The insurer does not forfeit its defenses under a policy by defending a suit brought against the insured, if the insurer informs the insured that such defense on the latter's behalf is under full reservation of its rights under the policy. . . ."

The distinguishing point of the *Eakle* case is that the insured had absented himself and could not be notified at or before the trial. Notification was sent to him at his last known address and was returned unclaimed. The court said:

" . . . There was nothing more that respondent could have done under the circumstances. . . ."

The court concluded that the insurer gave the best notice possible under the circumstances, and that the insured could not thereafter be heard to assert estoppel.

Here, however, Mr. White's whereabouts were known to respondent. Letters were sent to him, and the deputy sheriff, at respondent's request, talked with him on the telephone shortly before the trial. Respondent could have notified him of its reservation of rights, but did not.

In *Daly v. Employers' Liability Assur. Corp.*, 269 Mass. 1, 168 N. E. 111, 72 A. L. R. 1436, the insurer had notice when the case went to trial that the insured could not or would not attend, and it knew all of the facts on which it subsequently relied in urging a breach of the policy. However, it did not then notify the insured that it disclaimed liability under the policy, or that it continued in the case with a reservation of its defenses in an action on the policy. Although the insurer there did do more than was done here

by stating to the insured that his failure to attend was a violation of the terms of the policy, the court, nevertheless, held such statement insufficient. It did not amount to a disclaimer of responsibility nor a notice that the insurer did not intend to waive any defense to its liability under the policy by continuing the defense. The court said:

"In the absence of any notice to the contrary, the assured had a right to expect that the insurer which had undertaken to represent him in the actions would continue that representation until some notice should be given of its withdrawal or of a change in the capacity in which it was acting in the matter. . . ."

The insurer's continuing defense in the instant action without such notice constituted a waiver of the right subsequently to assert the breach of the co-operation clause.

■ There is another compelling reason why respondent waived its defense of non-co-operation.

When, before the trial commenced, it became unmistakably clear that White would not attend, and when, during the trial, respondent was offered a continuance, which it rejected, it was faced with a choice (1) of preserving its rights by withdrawing from the case; or (2) if it desired to continue with the defense, to obtain White's agreement that it might do so and still retain all of its rights to contest its liability to pay any possible judgment; or (3) it might notify White that, notwithstanding its continued defense, it would, nevertheless, refuse to pay any judgment. Unless the insured then raised objections, his assent would be assumed. Respondent made neither choice, but, on the other hand, insisted upon immediate trial. Obviously this choice was to improve its own position in any future attempt to enforce liability under the policy. At this point, whom did the attorney, employed by respondent to defend the action, represent, the policyholder White or the respondent?

Notwithstanding the respondent's obligation to defend any action against its insured, neither it nor any attorney employed by it, can use such right to improve its own position against interests of the policyholder.

When it decided to continue in the defense in the face of

an offer of continuance because of the absence of its insured, it assumed a position requiring the exercise of the utmost good faith because of the manifest conflict of interest. Respondent was required then to notify White of its position but did not do so.

The good-faith requirement is well exemplified by the recent decision of the supreme court of Pennsylvania in *Perkoski v. Wilson,* 371 Pa. 553, 92 A. (2d) 189, as follows:

"When the company voluntarily undertook the defense of Wilson, in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for an exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured such as later developed. It was accordingly incumbent upon the company to inform its policyholder of its prospective adverse interest with respect to the extent of its liability under the terms of the policy. Instead of so doing, however, the company carried on Wilson's defense until final judgments were entered against him. Then, for the first time, it made known to him that it denied liability for a substantial portion of the one judgment, not because either or both of the judgments exceeded the specified money limits of the policy but because of the insurer's contention favorable to itself and detrimental to the interest of its insured. Good conscience and fair dealing required that the company pursue a course that was not advantageous to itself while disadvantageous to its policyholder; and, not having so acted, the company was estopped thereafter to the extent of its liability to the insured on account of the judgment against him in favor of the husband-plaintiff."

In continuing the defense, the insurance company acted as the agent of the insured. When a conflict of interest develops, the act of the agent is subject to very close scrutiny.[3]

---

[3] ". . . When the insurer undertakes the defense of the claim or suit, it acts as the agent of its assured in virtue of the contract of insurance between the parties, and when a conflict of interest arises between the insurer, as agent, and assured, as principal, the insurer's conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest. *Douglas v. United States Fidelity & Guaranty Co., supra* [81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477.] *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 231 N. W. 257, petition for rehearing granted and subsequently decided in 235 N. W. 413, and

The attorney employed by the respondent to represent White was placed in an extremely compromising position. No man can serve two masters simultaneously. Public policy forbids. While both the respondent and the lawyer employed by it to represent White owed a fiduciary obligation to him, the lawyer's duty was even more exacting because of the mandate of Canon of Professional Ethics 6, 34A Wn. (2d) 127, which is:

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

Nothing could be plainer. The lawyer employed by the insurance company to represent White owed him undivided loyalty, but he acted for the respondent instead of for White. Such a situation is contrary to public policy. The decision of the Illinois appellate court in *Allstate Ins. Co. v. Keller*, 17 Ill. App. (2d) 44, 149 N. E. (2d) 482, is quite instructive. That court declared:

"Where an insurer's attorney has reason to believe that the discharge of his duties to his client, the insured, will conflict with his duties to his employer, the insurer, it becomes incumbent upon him to terminate his relationship with the client. *Reynolds v. Maramorosch*, 208 Misc. 626, 144 N. Y. S. 2d 900 (1955); *Helm v. Inter Insurance Exchange*, 354 Mo. 935, 192 S. W. 2d 417 (1946); *Hammett v.*

*G. A. Stowers Furniture Co. v. American Indemnity Co.*, Tex. Com. App., 15 S. W. 2d 544." *Traders & General Ins. Co. v. Rudco Oil & Gas Co.*, 129 F. (2d) 621, 627, 142 A. L. R. 799.

*McIntyre,* 114 Cal. App. 2d 148, 249 P. 2d 885 (1952). It was the duty of plaintiff's attorneys upon learning of the possible conflict of interests between plaintiff and defendant. to immediately notify defendant of this fact. Their failure to take such action can be attributed only to their desire to strengthen plaintiff's position in preparation for the filing of the instant suit. It would be untenable under such circumstances to allow plaintiff to disclaim liability under the policy. We conclude, therefore, that the trial court erred in finding that plaintiff was not liable under the terms of the policy because of the breach of co-operation clause. . . ."

The high professional standing of the attorneys[4] employed by the respondent to represent White at the trial of the negligence action justifies the assumption that in so doing their motives and intent were honest, but this is not the test for determining a lawyer's conduct when confronted with the necessity of choosing between conflicting interests. The standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated. The situation is not unlike that confronting the court in *Hammett v. McIntyre,* 114 Cal. App. (2d) 148, 249 P. (2d) 885, in which the court defined a lawyer's duty as follows:

". . . When such a situation arises, an attorney must terminate the relationship of attorney and client with the client whose interests would prevent the attorney from devoting his entire energies in that client's behalf and to that client's interests (*McClure v. Donovan,* 82 Cal. App. 2d 664, 666 [186 P. 2d 718]; *Anderson v. Eaton,* 211 Cal. 113, 116 [293 P. 788])."

It is undisputed that the injured third party suing under the policy stands in the shoes of the insured. *Baxter v. Central West Cas. Co.,* 186 Wash. 459, 58 P. (2d) 835; *Eakle v. Hayes, supra; Goergen v. Manufacturers Cas. Ins. Co.,* 117 Conn. 89, 166 Atl. 757; *Dickinson v. Homerich,* 248 Mich. 634, 227 N. W. 696. Respondent is thus foreclosed from asserting the breach against both the insured and the appellant.

[4]See footnote 2.

Reversed and a new trial ordered.

WEAVER, C. J., MALLERY, HILL, DONWORTH, FINLEY, and ROSELLINI, JJ., concur.

HUNTER, J., concurs in the result.

OTT, J. (dissenting)—I dissent for the following reasons:

(1) This is a garnishment proceeding. The judgment creditor has the burden of establishing, by a preponderance of the evidence, that the respondent is indebted to the insured. RCW 7.32.180, 7.32.270. Appellants failed to meet this burden. There was no obligation to pay or duty to perform on the part of the respondent because the performance by the *insured* of his promise of co-operation, which was a condition precedent to the duty to pay, had not occurred.

(2) The majority find that the condition precedent was not performed by the insured, but hold that its performance was waived by the respondent. I do not agree. Waiver is an intentional relinquishment of a known right. *Associated Indemnity Corp. v. Wachsmith*, 2 Wn. (2d) 679, 99 P. (2d) 420, 127 A. L. R. 531 (1940); *Eakle v. Hayes*, 185 Wash. 520, 55 P. (2d) 1072 (1936); *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P. (2d) 310 (1934). The respondent clearly manifested a *contrary intention* in its letter to the insured. It insisted that the condition precedent be performed. The record does not establish that the respondent intended, by its voluntary offer to defend the action, to waive performance of the condition on the part of the insured.

(3) The majority hold that the respondent's continuing to defend the action, after it had knowledge that the insured would not co-operate, was a waiver of the condition *because the insured was thereby misled, was entitled to assume that the condition had been waived, and was not subsequently notified otherwise.*

I do not agree with this holding for two reasons: (1) It invokes the doctrine of estoppel. The *insured* is the only one who can assert that he was *misled* by the conduct of

the respondent. *The insured is not a party to this proceeding*; hence, such a contention is not raised, nor can it be asserted here. (2) The appellants cannot assert the *majority's suggested defense* of abandonment or estoppel on behalf of the insured, unless legally authorized so to do by the insured. Such an authorization was not shown.

In my opinion, the judgment should be affirmed.

