## IN RE ANTONIO GUZMÁN JUARBE, Respondent.

No. 93. Submitted September 2, 1958.—Decided September 23, 1958.

*Santiago Polanco Abréu* for respondent. *Alfredo Archilla Guenard, Fiscal of the Supreme Court,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

By virtue of our order of July 22, 1957, the *Fiscal* of this Court filed a disbarment proceeding against Antonio Guzmán Juarbe, attorney at law, preferring the following charges:

"FIRST CHARGE

"6.—The respondent, Antonio Guzmán Juarbe, voluntarily, maliciously, and knowingly, violated the oath which he took as an attorney at law on April 9, 1951, and, specifically, Canon No. 6 of the Canons of Professional Ethics, 48 P.R.R. XI, XIII, leaving the interests of his client, Juan Carides Martínez, in

a complete state of abandonment and defenselessness, by assuming, without the latter's consent, the representation of other adverse and conflicting interests, filing in court thereafter, on June 9, 1956, a complaint against him involving the same transaction for which the said client had engaged his professional services; further taking undue advantage of his client's good faith by using the said Carides Martínez to induce other persons injured in the accident in question to engage also his professional services, the respondent knowing that there existed conflicting interests between the latter and his client; and, as it appears from paragraphs 2, 4, and 5 of the supporting memorandum which the respondent filed in this Court, his action was not moved by a desire to promote the best interests of justice in general and of his clients in particular but by the personal economic benefit which he would derive from such action.

### "SECOND CHARGE

"7.—The respondent, Antonio Guzmán Juarbe, voluntarily, maliciously, and knowingly, violated the provisions of the act which requires court authorization to settle and compromise the interests of a minor—31 L.P.R.A. § 786, p. 531, by joining as coplaintiff minor Juan López Varela in *Segundo Laureano et als.* v. *Juan Carides et als.*, civil case No. S.C. 56–329, damages, causing him to appear in the complaint in his own name and capacity, which he did not have under the law, and notwithstanding the fact that the father of the said minor lived in Isabela, Puerto Rico, he was not caused to appear in behalf and representation of his minor son, as required by law. But, on the contrary, the said respondent, together with the attorneys for the defendants, on June 26, 1956 subscribed and filed in Court, in the name and representation of all the plaintiffs, among them minor Juan López Varela, a motion for judgment by stipulation, agreeing with the other party that the Great American Indemnity Co. should pay to the said minor the sum of $100 and the U. S. Casualty Company the sum of $50 as indemnity for the damages suffered by him, without the proper court authorization required by law in such cases. The respondent permitted minor Juan López Varela to collect on June 29, 1956, the amount stipulated for the damages and to sign personally on that date proper release, despite the fact that it was not until the following day, June 30, 1956, that the respondent, Antonio Guzmán Juarbe, acting this time as notary public, set

up deed No. 15, dated June 30, 1956, for the emancipation of the said minor by his father, Félix López Pérez. That both the fact of the minority and emancipation of the child were withheld from the Superior Court of Aguadilla, which, not knowing that one of the plaintiffs was a minor; on July 12, 1956 rendered judgment by stipulation according to the terms of the motion filed, as a result of which the said judgment is voidable as to the minor concerned by reason of the improper conduct of the respondent."

The respondent answered denying the charges and setting forth the following:

### "SPECIAL DEFENSES AND NEW MATTERS

"In order to acquaint this Hon. Court with all data, facts, and circumstances relating to his professional conduct with respect to Juan Carides Martínez and the other litigants involved in the automobile accident which occurred on May 5, 1955, the appearing party hereby sets forth the following special defenses and informs that his professional conduct in connection with his legal representation was as follows:

"A.—On May 26, 1955, Juan Carides Martínez called at the law office of the appearing party. He requested his professional services to represent him in a criminal case before the District Court of Puerto Rico, Aguadilla Part acting in Isabela, for an alleged violation of § 17(a) and (e) of the Automobile and Traffic Act of Puerto Rico. On that date Carides Martínez explained to the appearing party, in preliminary form, the manner in which the accident had occurred. The appearing party agreed to represent Carides Martínez in the criminal case. The hearing was set for June 6, 1955.

"The appearing party assumed his representation gratuitously after Carides stated that he would engage him to represent him in the civil action which might arise as a result of the accident. Subsequent to May 26, 1955, the appearing party, upon organizing the evidence in the criminal action, learned that the witnesses were the same persons who suffered injuries in the same accident. After the hearing of the criminal case on June 6, 1955, the court acquitted Carides Martínez. That same day, after the hearing of the criminal case, Carides Martínez and the other injured persons called on the appearing party at his office in Isabela. As a result of that visit, the

appearing party agreed to represent Juan Carides and the seven injured persons and took the first steps in the civil case. To this end, he wrote to the insurance agents and held a conference in San Juan with officers of Compañía Carrión, Inc., the insurer of the truck involved in the crash with Carides Martínez's vehicle. The officers of that insurance company informed the appearing party that, according to their investigation, Carides Martínez was the only one responsible for the accident. The appearing party conducted a personal investigation and arrived at the conclusion that the statements made by the agents of Compañía Carrión, Inc. were correct. From that conclusion arose a conflict of interests between Carides Martínez and the other seven injured persons. On July 6, 1955, the appearing party had a conference in his Isabela office with Carides Martínez and the seven injured persons. At that conference the appearing party stated that, since there were conflicting interests, he would no longer represent Carides Martínez and advised the latter to engage the professional services of José Veray, Jr. On September 22, 1955, the appearing party wrote to Carides Martínez urging him to call at his Isabela law office. Carides called and the appearing party again advised him to engage the services of an attorney at law to represent him in the civil claim. On October 11, 1955, the appearing party again wrote to Carides Martínez urging him to call on October 15, 1955, at 11:00 a.m., at the office of José Veray, Jr., in Isabela, who wished to see him. Subsequent to October 15, 1955, Carides Martínez again called at the office of the appearing party insisting that, according to the information given him by José Veray, Jr., the appearing party would be able to represent him in the civil claim. The appearing party told him categorically that he could not represent him because he was compelled to file a claim against him and the company with which his vehicle was insured. In November 1955, the appearing party handed all the papers to Carides and ratified his inability to represent him and his obligation to file a complaint against him.

"On April 9, 1956, he filed the complaint in representation of the seven injured persons against Carides Martínez and the company with which his vehicle was insured, and Valenciano González and the company with which his vehicle was insured, (civil case No. S.C. 56–329, Superior Court, Aguadilla Part). On April 29, 1956, the marshal of the Superior Court, Agua-

dilla Part, personally served summons on Carides Martínez. The civil action filed by Carides Martínez would prescribe within six days after that date. The insurance companies answered the complaint. On June 26, 1956, the attorneys for the insurance companies and the appearing party filed a stipulation on judgment by compromise. On July 12, 1956, the court rendered judgment pursuant to the terms of the stipulation. Each injured party received the share fixed in the stipulation on judgment my compromise.

"B.—The appearing party admits in all fairness that he joined in the complaint all the plaintiffs as being of legal age. The appearing party acted on the basis of the information which the aggrieved parties furnished to him. The appearing party admits that when he subscribed on June 26, 1956 the stipulation on judgment by compromise, he still caused them to appear as being of legal age. The appearing party continued acting on the basis of the information originally furnished by the aggrieved parties. It was not until June 29, 1956, that the appearing party learned that Juan López Varela was under 21 years of age. On that date the releases connected with the insurance companies of Valenciano González were signed. The releases of the other insurance company were not signed on that date. On that day, June 29, 1956, Juan López Varela did not collect the amount of compensation to which he was entitled, although he did sign a release in favor of Compañía Carrión. The appearing party admits that he did not apprise the Superior Court of Puerto Rico, Aguadilla Part, of the existing situation with respect to plaintiff Juan López Varela. He alleges, however, that the following day, June 30, 1956, he authorized as a notary public deed No. 15, in which the appearing parties were Félix López Pérez, father of Juan López Varela, and Juan López Varela himself. On June 30, 1956, after the deed of emancipation was executed, Juan López Varela received, for the first time, part of the compensation to which he was entitled for the damages sustained. On July 12, 1956, the court rendered judgment by stipulation as submitted. On that date, Juan López Varela was already emancipated. The appearing party at no time had the deliberate purpose of deceiving the court. The appearing party honestly believed that, once the deed of emancipation was signed, Juan López Varela was competent and that notice thereof was unnecessary.

"We maintain that the judgment of the Superior Court is not voidable as to plaintiff Juan López Varela. Although the appearing party filed the complaint and subscribed the stipulation alleging that the plaintiff was of legal age, he did not collect any money until the deed of emancipation was executed, and he signed receipts which he keeps as evidence of payment received subsequent to the emancipation.

"C.—In the whole transaction connected with the automobile accident which occurred on May 5, 1955, the appearing party only collected the fees agreed upon with his clients, and none of the appearing parties sustained any financial loss.

"D.—When the facts related occurred, the appearing party had been practising his profession for four years.

"E.—The appearing party at all times acted in good faith in the entire conduct of the case. He never had in mind or in his spirit any intention of violating the oath which he took as an attorney at law and notary public, and his conduct was always moved by a desire to serve his clients with loyalty and honesty. This averment is strengthened by the position taken by the appearing party in submitting his memorandum of September 4, 1956, in answer to the letter of August 31, 1956 from the acting clerk of this Hon. Court.

"F.—The appearing party, conscious of his moral responsibility as attorney at law and notary public in the exercise of his profession, believes that any omission or fault of a technical character which he may have committed in his professional conduct of this litigation was not moved by a desire to derive any financial profit or to injure the rights of his clients or the rights or interests of Juan Carides Martínez."

By order of January 23, 1958, this Court appointed Superior Judge J. Martín Almodóvar to act as Master and to hear and receive all the evidence which the parties might wish to submit, certifying and transmitting the same to this Court with his findings of fact.

Hearings were held before the Master who, after considering the oral and documentary evidence submitted by the parties, made the following findings of fact:

"The respondent, Antonio Guzmán Juarbe, is an attorney at law and was authorized to practice the profession on April 15,

1951, and the notarial profession on April 20 of that year. He has practiced in the Commonwealth of Puerto Rico and has an office in the municipality of Isabela.

"On May 5, 1955, while Juan Carides Martínez was operating his vehicle, he was involved in an automobile accident, as a result of which he and passengers Víctor Monroig, Teodoro Concepción, Rosendo Monroig, Ramón Sánchez Pérez, and Juan López Varela were injured. A complaint was filed against Juan Carides Martínez for a violation of the Automobile Law. The defendant was represented by the respondent at the trial held on June 17, 1955, and he was acquitted on the same date.

"Juan Carides Martínez and the other persons injured in the accident, who were named as witnesses for the prosecution in the complaint against the said defendant, met on that same day in respondent's office. The respondent agreed to represent them and the latter to pay him 30 per cent of any amount awarded for damages. The service contract was subsequently amended. The plaintiffs had no financial resources and were unable to pay to the respondent any sum for the initial expenses of the suit. They bound themselves to pay him 50 per cent of any sums awarded; the respondent bound himself to pay all the expenses incurred until the termination of the litigation. The action terminated on June 26, 1956 by virtue of a stipulation of compromise.

"The respondent represented Juan Carides Martínez since June 15, 1955, and he sent a certificate to the U. S. Casualty Company, the insurer of the vehicle, together with a report on the accident.

"It was not until April 9, 1956, that the complaint by Juan López Varela et al. was filed against Juan Carides Martínez et al. On April 28 of that year the defendant was duly served with notice thereof by the marshal, Miguel Méndez Cabrera, who, after delivering copy of the complaint and summons, informed him that an answer was due within 10 days.

"In October 1955, Antonio Guzmán Juarbe advised Juan Carides Martínez to employ another attorney and recommended José Veray, Jr. The respondent arranged personally for an interview between that attorney and his client, Juan Carides Martínez. Despite the steps taken by the respondent, the latter never called at the office of Veray, Jr.

"Six months elapsed from October 1955 to the filing date of the complaint. During that time the respondent took steps

in the transaction on behalf of the other clients. The insurance companies disclaimed responsibility as to Juan Carides Martínez, alleging that according to their investigation he was responsible for the accident which was the subject of the action, as a result of which there arose a conflict of interests between Juan Carides Martínez and the other clients of the respondent.

"On more than one occasion Juan Carides Martínez was agreeable that the respondent should represent him and the other injured parties, and insisted that he should act as his attorney after Guzmán Juarbe informed him of the existing conflict. He assumed that the respondent continued acting as his attorney, and he so believed until June 29, 1956, when payment was made to the plaintiffs by virtue of a stipulation subscribed by the parties on June 16, 1956. On that date he called at the respondent's office in order to collect his share of the sum awarded by the insurance companies, and it was on that date that the respondent handed to him the papers, documents, and other effects in his possession.

"It was not until June 29, 1956, that Carides Martínez for the first time took steps to engage another attorney. In view of his inability to engage an attorney, he filed a complaint against Antonio Guzmán Juarbe in the Supreme Court of Puerto Rico.

"As a result of that complaint, on August 31, 1956, the Supreme Court wrote to the respondent and the latter filed a memorandum on September 4 of that year setting forth a statement of the facts as he understood them. An investigation was conducted, as a result of which the complaint giving rise to this report was filed on September 20, 1957.

## II

"With reference to the second charge, the Master makes the following findings of fact:

"Juan López Varela was caused to appear as being of legal age in the complaint filed in civil case No. 56–329 of the Superior Court of Puerto Rico, Aguadilla Part. (See first allegation of the complaint.) On April 9, 1956, the said Juan López Varela was only 18 years of age.

"The respondent prepared the report of the accident in the name of Juan Carides Martínez for the U. S. Casualty Co., one of the insurance companies. According to the report, Juan Varela is 36 years old. This information was furnished to him

by the insured. According to the report of the Police Department, the plaintiff's age is 36 years. In the certificate issued on June 7, 1955 by Dr. Elías Najul Bez, it is stated that he was 18 years old.

"On June 26, 1956, the respondent, in representation and on behalf of all the plaintiffs, among them minor Juan López Varela, filed a motion for judgment by stipulation whereby it was agreed that the American Indemnity Co. would pay to the said minor the sum of $100 and the U. S. Casualty Co. the sum of $50 for all the damages sustained by him; and by virtue of that stipulation, on June 29, 1956 the said minor signed personally the corresponding release without requesting proper judicial authorization from the Superior Court of Puerto Rico, Aguadilla Part.

"On June 26, 1956, the filing date of the stipulation in which Juan López Varela was caused to appear as being of legal age and a compromise was reached without obtaining judicial authorization, it had been agreed, as part of the compromise, to execute a deed of emancipation of Juan López Varela who on that date was 18 years of age. (See Mr. Aldrey's memorandum of June 26, 1956, which appears in Exhibit B of complainant.) It is to be noted that on the date of the stipulation the fact of the minority was also known, at least, to one of the attorneys for the defendants. Notwithstanding this fact and the agreement to execute that deed, the respondent did not give notice to or inform the Superior Court, Aguadilla Part, that the said Juan López Varela was a minor, or request proper judicial authorization for the purpose of carrying out the compromise. When the respondent allowed the minor to sign a release, he knew that he was under age and that he could not perform such act without complying with the legal requirements. As a result of the compromise of the suit, the respondent prevented the Superior Court, Aguadilla Part, and the prosecuting attorney of this court from passing upon the usefulness and advisability to the minor of such compromise."

This Court granted 10 days to the parties to file objections, if any, to the Master's report. The complainant appeared by memorandum, informing that he had no objections to the Master's findings of fact. The respondent has not filed objections to such findings.

 Canon 6 of the "Canons of Professional Ethics Governing the Conduct of Lawyers of Puerto Rico" provides:

"6. *Adverse Influences and Conflicting Interests.*—It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." 48 P.R.R. XI, XIII.[1]

The courts have required of lawyers the most strict compliance with the obligations imposed on them by this canon. Attorney-client relations are based fundamentally on mutual confidence. Hence, it is the duty of a lawyer, when engaged, to disclose all the circumstances of his relations to the parties as well as any interest in the controversy, for such action will enable the client to make a better and more conscientious selection of counsel. Under the third paragraph of Canon 6, it is the duty of the attorney to represent the client with undivided fidelity, and he is forbidden to divulge the secrets and confidences reposed in him. And this prohibition subsists even after the termination of the attorney-client relations. That is why the attorney is forbidden to accept retainers or employments from others in matters adversely affecting any interest of his former client with respect to which confidences have been reposed. The fidelity of the attorney to his client in matters which the latter has con-

---

[1] The text of this canon is identical with that of Canon 6 of the Canons of Professional Ethics of the American Bar Association.

sulted or entrusted to him is indivisible, and subsists even after the termination of the attorney-client relations.[2]

Some difficulties have arisen in the interpretation of Canon 6 when the courts, in incidents of disqualification of attorneys, have been faced with a decision as to what is "an interest of the client with respect to which confidence has been reposed." Two facets have been recognized to the problem, to wit: (1) when the attorney acts adversely to the former client's interest in the same matter or cause of action. In such cases the courts will exclude the attorney from the subsequent representation of the new client, whether or not he actually received any confidential information from the former client; and (2) when the attorney acts adversely to the former client's interests in a different matter or cause of action in which confidential information revealed by the first client might or might not be of importance. Different situations have arisen under this category. Some courts have required the first client to make a showing of the confidential information which will be used against him before the attorney in the case will be excluded. Other courts have taken a different view, based precisely on the fact that to compel the client to show the confidential matters would require the disclosure of the very matters intended to be protected by the rule.[3]

In an incident to disqualify an attorney who had previously represented the plaintiff, the following language of the Supreme Court of Illinois is cited with approval in *Lamb v. Isley*, 114 S.W.2d 673:

" . . . The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to

---

[2] *Wutchuma Water Co.* v. *Bailey*, 15 P.2d 505; *United States* v. *Bishop*, 90 F.2d 65; *Watson* v. *Watson*, 11 N.Y.S.2d 537.

[3] See the commentary on the case of *T.C. Theatre Corp.* v. *Warner Bros. Pictures, Inc.*, 113 F. Supp. 264, in 26 Rocky Mt. L. Rev. 195 (University of Colorado School of Law, and *Attorney Disqualified Where Past Legal Association Results in Conflict of Interests*, 6 Syracuse L. Rev. 360, No. 2.

discharge inconsistent duties. When he has once be retained and received the confidence of a client, he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof. Weeks on Attorneys, 2d Ed. § § 120, 271; 1 Thornton on Attorneys, § 174. This rule is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions. Strong v. International Bldg., etc., Union, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792. He owes to his client fidelity, secrecy, diligence, and skill, and cannot take a reward from the other side. He is not, as a general rule, allowed to divulge information and secrets imparted to him by his client or acquired during their professional relation unless authorized to do so by the client himself. Hatch v. Fogerty, 40 How. Prac. (N.Y.) 492. It is the glory of the legal profession that its fidelity to its clients can be depended upon; that a man may safely go to a lawyer and converse with him upon his rights in litigation with absolute assurance that that lawyer's tongue is tied from ever discussing it. U. S. v. Costen (C.C.) 38 F. 24. This rule has been so strictly enforced that it has been held that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though while acting for his former client he acquired no knowledge which could operate to the client's disadvantage in the subsequent adverse employment."

See, also, *Consolidated Theatres* v. *Warner Bros. Cir. Man. Corp.*, 216 F.2d 920; Henry S. Drinker, *Legal Ethics*, 104 *et seq.;* Frederick C. Hicks, *Organization and Ethics of the Bench and Bar* 341–60.

The Rules of Professional Conduct of California contain a similar prohibition to that found in the third paragraph of Canon 6, regarding the acceptance by the attorney of employments of another in matters adversely affecting any interest of the client in reference to which confidence has

been reposed.[4] In *Galbraith* v. *State Bar of California,* 23 P.2d 291, cited later with approval in *Sheffield* v. *State Bar of California,* 140 P.2d 376, an attorney was found guilty of having violated the said Rule of Professional Conduct because, after representing two clients in certain criminal cases, he instituted a civil-damage action against them and on behalf of others, based on the same facts or transactions involved in the criminal action. In that case the court stated at p. 292:

"A reasonable construction of this rule suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney will be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he may be called upon to use such confidential information. In subdivision 5 of section 282 of the Code of Civil Procedure it is declared to be the duty of an attorney 'to maintain inviolate the confidence, and at every peril to himself, to preserve the secrets of his client.' See, also, Anderson v. Eaton, 211 Cal. 113, 293 P. 788. In Wutchumna Water Co. v. Bailey, 216 Cal. 564, 15 P.(2d) 505, 509, it is declared that 'an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him, or may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' The circumstances giving rise to the first two charges of misconduct were such as might suggest or require that petitioner in the prosecution of the damage suits make use of information acquired by him while representing the respective defendants in the prior penal proceedings."

The facts proved, according to the findings of the Master, are sufficient to establish that the respondent's conduct in

---

[4] Rule 5 of the Rules of Professional Conduct of California provides:

"A member of The State Bar shall not accept employment adverse to a client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client."

this case constitutes a violation of his duties under the third paragraph of Canon 6 of the Canons of Professional Ethics. That attorney undertook the representation of and represented Juan Carides Martínez in the criminal action against him for a violation of the Automobile Law, as a result of an automobile accident which occurred while Carides Martínez was operating his car and in which several persons were injured. Carides Martínez was acquitted in the criminal action. The respondent represented Carides and the injured passengers and filed a claim for damages based on the same facts alleged in the criminal action against Carides. Thereafter the respondent advised Carides that he was withdrawing from the civil action, and filed a complaint on behalf of the injured passengers and against the said Juan Carides Martínez *et als*. In other words, the respondent filed an action against his former client Carides, based on the same facts or accident involved in the criminal action in which he had represented Carides. Under the third paragraph of Canon 6, he was forbidden to do so. The fact that the respondent advised Carides that he was withdrawing from the civil action, and also that Carides gave him his consent to represent him and the injured passengers, did not preclude him from prosecuting a civil action against Carides, to the detriment of the latter's interests, involving the same accident. There is no question that by so doing the respondent took inconsistent positions. In the criminal action, he acted on behalf of Carides and procured his acquittal. In the civil action, he took the position that Carides was responsible for the damages to the passengers and, therefore, that such damages were caused through his fault or negligence.

Nor is there any question that in the criminal action against Carides the respondent obtained, or should have obtained from the latter, confidential information which he could have used against him in the civil action.

We are not therefore concerned with a case in which an attorney commits an involuntary violation of Canon 6

of the Canons of Professional Ethics. On the contrary, the respondent, after acting on behalf of Carides in the criminal action and agreeing also to represent him in the civil action, realized that there was a conflict of interests between Carides and the injured passengers whom he also represented. It was therefore, the respondent's professional duty under Canon 6 to forthwith waive the representation of all the injured passengers. Yet, the respondent, knowing of the existence of such conflict of interests, instituted the civil action on behalf of the injured passengers and against Carides, and merely advised the latter that he was withdrawing from the civil action and to employ another attorney. Although the facts show that the respondent did not act in bad faith but rather through ignorance of his professional duties, this circumstance does not excuse him from responsibility. We therefore hold that the first charge was proved.

■ The second charge was also proved. According to the Master's correct finding, when the respondent filed in court the motion for judgment by stipulation on behalf of all the plaintiffs, among them minor Juan López Varela, a fact of which the respondent was aware and of which he did not inform the court, he prevented the latter from passing upon the need and advisability to the minor of such transaction. See *Cruz* v. *Central Pasto Viejo, Inc.*, 44 P.R.R. 354. We can not sanction the respondent's conduct. He failed to do his duty to the client and the court.

Considering that the respondent is a relatively young lawyer in the practice of his profession, that he did not act in bad faith by instituting a civil action against his former client Juan Carides Martínez, and that there is no showing of fraud in compromising the suit on behalf of minor Juan López Varela, as well as the other attendant circumstances, the respondent is suspended from the practice of law for a period of six months.